**Shirley HILL, Plaintiff/Appellant,**

v.

**JOHN BANKS BUICK, INC. and General Motors Acceptance Corp., Defendants/Appellees.**

Court of Appeals of Tennessee, Western Section, at Knoxville.

Oct. 1, 1993.

Application for Permission to Appeal Denied by Supreme Court, March 7, 1994.

Wayne K. Houser, Jr., Knoxville, for plaintiff, appellant.

Joseph B. Yancey, Knoxville, for defendant, appellee John Banks Buick, Inc.

FARMER, Judge.

This case involves the sale of an automobile by Appellee, John Banks Buick, Inc. (John Banks) to Appellant, Shirley Hill. Mrs. Hill claims that John Banks misrepresented the condition of the automobile at time of purchase by stating that the vehicle was "new" when, in fact, it was a previously titled, "used" vehicle. The trial court directed a verdict in favor of John Banks at the close of Mrs. Hill's proof and she now appeals.

On May 31, 1989, Mrs. Hill purchased a 1989 Buick Regal from John Banks. While at the dealership, Mr. and Mrs. Hill viewed the subject automobile which had a window sticker stating "Demo" on it. The sticker specifically reads, "Demo–9–15–88" with the words "Mr. John Banks" written beneath. The "total suggested price" is listed at $18,-132. The automobile's odometer had a digital readout.[1] After test driving the vehicle, Mrs. Hill decided to purchase the car. She signed a sales contract completed by an employee of John Banks and "three blank registration or odometer readings."

Approximately six days later, the Hills returned to John Banks to obtain the remaining paper work on the car which included documents for physical damage insurance, the retail installment sales contract and an application for certificate of title and registration. The application identifies the car as "used." Mrs. Hill states that she signed this document uncompleted on May 31. The installment sales contract, signed by Mrs. Hill, identifies the Regal as "Demo" under a box entitled "New or Used."[2]

Upon reviewing these documents, Mrs. Hill requested that her original automobile be returned to her as she no longer wished to purchase the Regal. John Banks refused

---

1. The parties stipulated that the automobile had 9,385 miles at time of purchase.

2. The "Bill of Sale" also identifies the vehicle as "Demo" as opposed to new or used.

and Mrs. Hill filed suit alleging breach of express and implied warranties, intentional and negligent misrepresentation, fraud, violation of the Tennessee Consumer Protection Act and negligent failure to warn and inspect. She also alleges misrepresentation as to the amount financed which, according to her, was to be $5,908.98 and, in actuality, was $6,495.78. Mrs. Hill amended her complaint to allege that John Banks forged her name to the Odometer Disclosure Statement, violating the Federal Odometer Act 15 U.S.C. § 1981 et seq., and fraudulently represented that the purchase of life and disability insurance was necessary.[3]

John Banks denied the allegations and filed a counterclaim alleging that Mrs. Hill's lawsuit was frivolous. The counterclaim was dismissed by the trial judge.

■■■■ The sole issue on appeal is whether the trial court erred in directing a verdict for John Banks. In reviewing the trial court's decision, we must look at all the evidence, take the strongest legitimate view of the evidence in favor of the opponent of the motion, allow all reasonable inferences to that party, discard all countervailing evidence and deny the motion if there is any doubt as to the conclusions to be drawn from the whole evidence. A verdict should be directed only when a reasonable mind could draw but one conclusion. *Goode v. Tamko Asphalt Products, Inc.,* 783 S.W.2d 184, 187 (Tenn.1989). The appellate court does not weigh the evidence. *Chambliss v. Shoney's, Inc.,* 742 S.W.2d 271, 272 (Tenn.App.1987).

We summarize Mrs. Hill's testimony as follows: She saw a window sticker on the vehicle that read "Demo" with Mr. Banks' name on it. A salesman for John Banks informed her that "Demo" meant demonstrator and that the car was new. She was asked to sign a document identifying the car as "new." "[The salesman] said it was a demonstrator, but it had been driven by people test driving, and it had low mileage or

had some miles, ... it had mileage on it." She was never informed of the automobile's actual mileage or how the car was to be titled. She asked the salesman if he could "come down" on the price "since it was a demo and it did have some miles on it." The sales manager informed her that the car was "brand new ... custom in every way" and that he could not reduce the price. She agreed upon a purchase price of $18,132 which, unbeknownst to her, later changed to $18,547. When asked "[w]hat is the difference in that car being called new and used if it had 9,385 miles," Mrs. Hill replied "[b]ecause it had been titled. It was a used, secondhand, titled car." She admitted stating in her sworn deposition that she would have bought the car even if she had known its actual mileage, but denied at trial that she would have purchased it. She still "loves" the car and if it had been marked "new" instead of "used," it would not have made any difference as to performance. At one point during her testimony, Mrs. Hill stated that her complaint with the car is "[j]ust the mileage." Later, she opined that her "real complaint" is that the car was previously titled to John Banks Buick and she was not so informed. When asked, "[w]hat was the difference in this car, the way it was titled, and one that had new checked on the title instead of used," Mrs. Hill responded "[t]he only difference was it was titled. The price and value had dropped." She stated that there was no difference in how the car operated. Mrs. Hill admitted purchasing the vehicle without knowing its actual mileage. She signed a blank odometer statement "knowing that they could put in whatever they wanted to." She testified that the difference between a vehicle having 9,300 miles new and one with the same mileage that was used is $6,000. Since its purchase, she has driven the car some additional 39,000 miles. She received a warranty book[4] on the vehicle.

3. Mrs. Hill filed a second amended complaint alleging that GMAC was the holder of the installment sales contract between her and John Banks and was liable for fraud, unfair or deceptive selling practices, violating the Truth In Lending Laws and T.C.A. § 47–18–101 et seq. and acting in concert with John Banks to commit fraud.

Although the record does not contain an order of dismissal, it does indicate that GMAC was released from this lawsuit.

4. This book states that it applies to "new cars."

Nelson Forbes, Jr., the business manager at John Banks Buick at the time of purchase, testified that the vehicle was a demonstrator, previously titled to John Banks Buick. It was previously titled "[t]o put a regular plate on it instead of a demo plate." Forbes stated that "Demo" usually means "new" and that "[i]f it was an untitled demo it would still be a new car and if it . . . was [a] titled demo it would be a used car as far as the State is concerned." He testified that "G.M.A.C. treated all our demos, whether they were titled or not, as new cars as far as financing . . . ."

Martha Irwin, the assistant director of the Titling and Registration Division, testified that pursuant to state policy, the Regal could only be titled as "used" because it had been previously titled, regardless of its mileage. She stated that the vehicle could only be titled "new" if titled from an MSO (Manufacturers Statement of Origin) and Mrs. Hill was assigned the vehicle from a title, not an MSO.

Fred Sliger, a credit representative for GMAC, testified that the company's lien on the Regal had been released. Sliger stated that the vehicle was represented to GMAC as a new car that had been placed in a demonstration program at the dealership. He stated that for the financing purposes of GMAC, the vehicle was considered new because it was the first retail sale of the automobile. The car having been previously titled to John Banks was not considered a retail sale. He stated that because the vehicle was a demonstrator, its mileage was unimportant in GMAC's classification of the car.

■ One alleging fraud must prove "an intentional misrepresentation with regard to a material fact; knowledge of the representation's falsity, i.e., it was made 'knowingly' or 'without belief in its truth' or 'recklessly' without regard to its truth or falsity; the plaintiff reasonably relied on the misrepresentation and suffered damages; and the misrepresentation relates to an existing or past fact." *Oak Ridge Precision Indus., Inc. v. First Tennessee Bank Nat'l Ass'n,* 835 S.W.2d 25, 29 (Tenn.App.1992) (quoting *Stacks v. Saunders,* 812 S.W.2d 587 (Tenn. App.1990)). Concealment or nondisclosure also constitutes fraud when the party charged with fraud has knowledge of an existing fact or condition and a duty to disclose. *Lonning v. Jim Walter Homes, Inc.,* 725 S.W.2d 682, 685 (Tenn.App.1986). The fact or condition must materially affect the agreement. *Piccadilly Square v. Intercontinental Constr. Co.,* 782 S.W.2d 178, 184 (Tenn.App. 1989). One pursuing a claim of negligent misrepresentation must prove by a preponderance of the evidence that the defendant supplied the information to the plaintiff; the information was false; the defendant did not exercise reasonable care in obtaining or communicating the information; and the plaintiff justifiably relied on the information. *Atkins v. Kirkpatrick,* 823 S.W.2d 547, 552 (Tenn. App.1991).

■ Viewing the evidence in the light most favorable to Mrs. Hill, we find no misrepresentation by John Banks regarding the actual mileage of the automobile. Mrs. Hill testified that she was informed that the vehicle was a demonstrator with miles on it. She even asked if the purchase price could be reduced due to this fact. Mrs. Hill test drove the vehicle and had every opportunity to discover its actual mileage if this was a material factor in her decision to purchase the car. There is no evidence that the automobile's odometer was not working properly or that John Banks attempted to conceal its readout.

It is a general rule that whatever puts a person on inquiry amounts in judgment of law to notice, provided the inquiry becomes a duty, and would lead to a knowledge of the facts by the exercise of ordinary intelligence and understanding. A person who has sufficient information to lead him to a fact is deemed conversant with it, and a person who has notice of facts which would cause a reasonably prudent person to inquire as to further facts is chargeable with notice of the further facts discoverable by proper inquiry.

66 C.J.S. Notice § 11 (1950). "It is axiomatic that no man can recover upon the theory of fraud or mistake with respect to any matter of fact about which he has actual knowledge or legally imputed knowledge." *Blow Stave*

*Co. v. Hattendorf,* 7 Tenn. C.C.A. 415, 417 (1917).

The proof shows that Mrs. Hill purchased the car without knowing its actual mileage and discovered what she thought read 938.5 miles after taking the vehicle home. No dissatisfaction was expressed, however, until Mrs. Hill discovered the vehicle was labeled "used" on her certificate of title registration some six days later.

As to the representation that the car was new, the evidence reveals that the vehicle is considered used by the state for titling purposes. Both the business manager for John Banks and a GMAC representative testified that they considered the vehicle new because it had not been previously sold at retail to the public. Thus, pursuant to their sales practices, the vehicle was new.

Counsel for Mrs. Hill concedes that she was never told how the car would be titled and she never asked. She claims that the vehicle is diminished in value because her certificate of title labels the car "used." The uncontroverted proof is that Mrs. Hill knew the car was a demonstrator with actual mileage. She testified that she "loves" the automobile and that there is no difference in its operation whether titled "new" or "used." We hold John Banks' failure to disclose how the vehicle would be titled by the State of Tennessee immaterial. We further find the fact that the car was titled "used" does not affect its value. Mrs. Hill was given a warranty for new cars and other than for state titling purposes, the automobile meets the statutory definition of "new passenger car." [5]

We find no violation of the Tennessee Consumer Protection Act. The judgment of the trial court is affirmed. Costs are taxed to Appellant, for which execution may issue if necessary.

CRAWFORD and GODDARD, JJ., concur.

---

5. T.C.A. § 55–5–106(e)(2) states:

"New passenger cars" means any passenger car which has never been the subject of a sale at retail to the general public;

As of 1990, this definition applies to T.C.A. § 47–18–104(b)(6) of the Tennessee Consumer Protection Act which reads:

(b) Without limiting the scope of subsection (a), the following unfair or deceptive acts or practices affecting the conduct of any trade or commerce are declared to be unlawful and in violation of this part:

. . . .

(6) Representing that goods are original or new if they are deteriorated, altered to the point of decreasing the value, reconditioned, reclaimed, used or secondhand;

See T.C.A. § 47–18–119.