IN THE COURT OF APPEALS OF TENNESSEE

FILED

**September 23, 1997**

**Cecil Crowson, Jr.**
Appellate Court Clerk

| | | |
|---|---|---|
| DR. DONALD SHERRARD and wife MELANIE SHERRARD, | ) | C/A NO. 03A01-9701-CV-00007 |
| | ) | |
| Plaintiffs-Appellants, | ) | |
| | ) | |
| | ) | |
| v. | ) | APPEAL AS OF RIGHT FROM THE |
| | ) | KNOX COUNTY CIRCUIT COURT |
| | ) | |
| | ) | |
| WALT DICKSON doing business as WALT DICKSON CONSTRUCTION COMPANY and BOB JONES, | ) | |
| | ) | |
| | ) | HONORABLE HAROLD WIMBERLY, |
| Defendants-Appellees. | ) | JUDGE |

For Appellants

DOUGLAS L. DUTTON
AMY V. HOLLARS
Hodges, Doughty & Carson
Knoxville, Tennessee

For Appellee Dickson

W. NEAL McBRAYER
Trabue, Sturdivant & DeWitt
Nashville, Tennessee

For Appellee Jones

JEFFREY A. WOODS
Robertson, Ingram & Overbey
Knoxville, Tennessee

O P I N I O N

AFFIRMED AND REMANDED                                    Susano, J.

This litigation arose out of the sale of a subdivision lot. The plaintiffs, Dr. Donald Sherrard and his wife, Melanie Sherrard ("Sherrards"), sued Walt Dickson, doing business as Dickson Construction Company ("Dickson") and Bob Jones ("Jones"), alleging that the defendants breached a contract of sale by failing to provide a lot suitable for construction of the "house of [their] choice"; that the defendants misrepresented the nature and extent of brush and other debris buried on the lot; and that the defendants violated the Tennessee Consumer Protection Act, T.C.A. § 47-18-101, *et seq.*, ("the Act") by failing to disclose the full extent of such debris. Following a bench trial, the court found that the Sherrards were entitled to a judgment of $11,000 against Dickson for breach of contract and negligent misrepresentation. It also found that Dickson had violated the Act and that the Sherrards were consequently entitled to attorney's fees of $3,500. The trial court dismissed the Sherrards' complaint against Jones. The Sherrards and Dickson each question various aspects of the trial court's judgment, raising several issues which in substance present the following questions for our review:

> 1. Did the trial court err in finding Dickson liable for breach of contract and negligent misrepresentation?
>
> 2. Did the trial court err in finding that Dickson had violated the Tennessee Consumer Protection Act?
>
> 3. Did the trial court err in awarding actual damages of $11,000 to the Sherrards?
>
> 4. Did the trial court abuse its discretion in awarding the Sherrards a portion of their attorney's fees, but no discretionary costs?

2

5. Did the trial court err in dismissing the
Sherrards' claims against Bob Jones?


I. *Facts*


On January 20, 1993, the Sherrards and Dickson executed a contract, by the terms of which the Sherrards agreed to purchase Lot 22 in the Bennett Place Subdivision. The lot was owned by Dickson and Jones. Dickson had also owned adjoining Lot 21 at some time in the past. The subject contract contains the following provision:

> Please note that during development of Bennett Place some brush was buried on the lot line between [lots] 21 & 22. This brush is on the lot line and should not affect construction of the house of your choice on Lot 22. Have your builder contact us and we'll show him exactly.

The Sherrards discussed this provision with Dickson's wife and agent, Marty McGinnis-Dickson, with whom the Sherrards had negotiated the purchase of Lot 22. She informed the Sherrards that the debris would not interfere with the construction of their house.

The Sherrards retained Glenard Harrington, a general contractor, to build their house. The contract between the Sherrards and Harrington included an allowance of $11,000 for the construction of the house's foundation, and provided that the Sherrards would be responsible for any additional cost.

Upon commencement of construction, Harrington and his sub-contractor discovered debris in several test-holes dug along the outline of the foundation walls. Harrington notified the Sherrards and also contacted Dickson regarding the discovery. After inspecting the site, Dickson informed Harrington that brush was buried only along the property line between Lots 21 and 22. He also stated that Harrington should have contacted him prior to commencing construction so that Dickson could have shown Harrington the precise location of the brush. Dickson also suggested placing the house further away, at a distance of 20 feet from the lot line, and modifying the house plans to allow rear access to the garage.

Harrington continued excavating the foundation area and experienced several cave-ins that he testified were due to uncompacted fill dirt on the site. He also discovered a large brush pit at the left front corner of the house site, approximately 21 feet from the property line. Dickson admitted at trial that even had Harrington followed his suggestion to build the house 20 feet from the lot line, the house nevertheless would have been situated almost ten feet into the brush pit. Harrington testified to finding, in addition to the brush pit, brush and trees buried "all over the lot" and, with the exception of one section near the front wall of the garage, along the entire foundation of the house. Furthermore, he discovered significant amounts of concrete buried along the proposed location of the back wall of the house.

4

Harrington consulted an engineer, Bob Collignon, regarding a solution to the problems created by the debris. After observing debris "throughout the entire location of the house," Collignon suggested that Harrington construct higher foundation walls and wider footings, and that he insert steel rods for support. He testified that this was the best, least-expensive method to compensate for the debris. Harrington subsequently implemented Collignon's recommendations. The Sherrards contend that the construction of the house's foundation ultimately cost an additional $51,011.06, which amount they paid.

Dickson testified that other than the brush that had been buried along the lot line during development of the subdivision, he was unaware of any material buried on Lot 22. He testified that he knew the buried brush extended as much as 60 feet from the lot line at the front of the lot, and that the width of the brush pit decreased to approximately 25 feet at the rear of the lot[1]. However, Dickson maintained that the brush should not have interfered with construction of the house, since the area where it extended to a width of 60 feet was not within the part of the lot on which a house legally could be constructed, given the various setback restrictions. Dickson also contended that the brush pit easily could have been avoided had Harrington contacted him to determine its exact location prior to beginning construction.

After taking the matter under advisement for some period of time, the trial court heard further proof limited to

---

[1]Lot 22 was approximately 95 feet wide along the front of the lot, and approximately 188 feet wide at the rear.

the Sherrards' attorney's fees and costs. It then awarded the Sherrards a judgment of $11,000 against Dickson, finding Dickson liable for breach of contract and negligent misrepresentation. Finding that Dickson had also violated the Tennessee Consumer Protection Act, the trial court awarded the Sherrards $3,500 of their attorney's fees of $6,653.93. The court declined, however, to award treble damages or any discretionary costs to the Sherrards, and it dismissed the Sherrards' claims against Jones.

## II. *Standard of Review*

In this non-jury case, our review is *de novo* upon the record, with a presumption of correctness as to the trial court's factual determinations, unless the preponderance of the evidence is otherwise. Rule 13(d), T.R.A.P.; *Union Carbide Corp. v. Huddleston*, 854 S.W.2d 87, 91 (Tenn. 1993). The trial court's conclusions of law, however, are afforded no such presumption. *Campbell v. Florida Steel*, 919 S.W.2d 26, 35 (Tenn. 1996); *Presley v. Bennett*, 860 S.W.2d 857, 859 (Tenn. 1993).

In this case, the trial court made no findings of fact. This, of course, causes some uncertainty as to the basis of the trial court's judgment. *Kelly v. Kelly*, 679 S.W.2d 458, 460 n.1 (Tenn.App. 1984)(citing *Fisher v. Fisher*, 648 S.W.2d 244, 245 (Tenn. 1983)). As a result, there is nothing in the record to which the presumption of correctness found in Rule 13(d), T.R.A.P., can attach. *Devorak v. Patterson*, 907 S.W.2d 815, 818 (Tenn.App. 1995); *Goodman v. Memphis Park Comm'n,* 851 S.W.2d 165, 166 (Tenn.App. 1992); *Kelly*, 679 S.W.2d at 460. We thus review

6

the record *de novo* and focus on the *result* reached by the trial court, mindful of the fact that we are called upon to pass upon the correctness of that result. **Shelter Ins. Companies v. Hann**, 921 S.W.2d 194, 202 (Tenn.App. 1995); **Kelly,** 679 S.W.2d at 460.

We also note that the trial court is in the best position to assess the credibility of the witnesses; accordingly, such determinations are entitled to great weight on appeal. **Massengale v. Massengale**, 915 S.W.2d 818, 819 (Tenn.App. 1995); **Bowman v. Bowman**, 836 S.W.2d 563, 566 (Tenn.App. 1991). Since the trial judge resolved the issues partially--but not entirely-- in favor of the Sherrards' position, we must assume that he determined all issues of credibility in a manner that supports his result. *See* **Devorak**, 907 S.W.2d at 818-19 (finding, despite an absence of findings of fact, that the trial court had accredited the testimony of the defendants, given its judgment in their favor on claims of fraud and misrepresentation).

III. *Applicable Law*

The Sherrards' theories of recovery against Dickson essentially fall into three categories: breach of contract, misrepresentation, and violation of the Tennessee Consumer Protection Act, T.C.A. § 47-18-101, *et seq*.

In order to prevail on a claim of negligent misrepresentation, a plaintiff must prove that: 1) the defendant supplied information to the plaintiff; 2) the information was false; 3) the defendant failed to exercise reasonable care in

7

obtaining or communicating the information; and 4) the plaintiff justifiably relied upon the information. *Hill v. John Banks Buick, Inc.*, 875 S.W.2d 667, 670 (Tenn.App. 1993); *Atkins v. Kirkpatrick*, 823 S.W.2d 547, 552 (Tenn.App. 1991); *Merriman v. Smith*, 599 S.W.2d 548, 556-57 (Tenn.App. 1979). Each of the foregoing elements must be established by a preponderance of the evidence. *Hill*, 875 S.W.2d at 670; *Atkins*, 823 S.W.2d at 552; *Merriman*, 599 S.W.2d at 556-57.

The Tennessee Consumer Protection Act, T.C.A. §47-18-101, *et seq.*, provides, in pertinent part, that

> ...the following unfair or deceptive acts or practices affecting the conduct of any trade or commerce are declared to be unlawful and in violation of this part:
>
>        *     *     *     *
>
> Engaging in any other act or practice which is deceptive to the consumer or to any other person....

T.C.A. § 47-18-104(b)(27). The Act confers a private right of action on an individual who has been damaged as a result of a violation of its provisions. *Haverlah v. Memphis Aviation, Inc.*, 674 S.W.2d 297, 305 (Tenn.App. 1984); *Brungard v. Caprice Records, Inc.*, 608 S.W.2d 585, 591 (Tenn.App. 1980). Our courts have recognized that unfair or deceptive acts in the sale of real estate fall within the ambit of the statute. *Steed Realty v. Oveisi*, 823 S.W.2d 195, 198 (Tenn.App. 1991). The Act further provides that

8

> [i]f the court finds that the use or
> employment of the unfair or deceptive act or
> practice was a willful or knowing violation
> of this part, the court *may* award three (3)
> times the actual damages sustained and may
> provide such other relief as it considers
> necessary and proper.

T.C.A. § 47-18-109(a)(3) (emphasis added).  Thus, the Act vests

the trial court with broad discretion in determining whether to

award treble damages or other relief in the event the court finds

a "willful or knowing violation."  *Id.; see also* **Smith v. Scott

Lewis Chevrolet, Inc.**, 843 S.W.2d 9 (Tenn.App. 1992).


IV.  *The Sherrards' Claims against Dickson*


Our review of the record persuades us that the proof

supports the trial court's finding of a negligent

misrepresentation by Dickson.  It is obvious that Dickson

supplied information to the plaintiffs when he stated in the

contract that brush was buried "on the lot line" between Lots 21

and 22.  Furthermore, Dickson represented that the brush "should

not affect construction of the house of [the Sherrards']

choice..."  As to the second element of a negligent

misrepresentation, the information furnished by Dickson

ultimately proved to be false.  It is clear from the testimony of

all witnesses, including Dickson, that there was brush buried in

locations so far from the property line that it could not

reasonably be considered "on the lot line".  Harrington testified

that in the construction industry, the words "on the lot line"

connote an area within the city-mandated setback, i.e.,

approximately ten feet.  The proof indicates that the brush pit

9

extended along the property line and ranged in width from 25 to 60 feet from the lot line.  In addition, the statement in the contract that the brush should not affect construction of the house of the Sherrards' choice proved to be false.  Obviously, the brush pit did interfere significantly with the construction of the Sherrards' house, leading to increased time, effort and expense in building the foundation.

The third and fourth elements of a negligent misrepresentation claim are also present.  The proof indicates that Dickson did not exercise reasonable care in communicating information about the buried material to the Sherrards.  Despite Dickson's knowledge of the size of the brush pit, he nevertheless represented twice in the contract that the brush was buried only "on the lot line."  Finally, it was Dickson, not the Sherrards, who had reason to know the full extent of the material buried in the brush pit.  Thus, the Sherrards' reliance upon his representations was entirely reasonable.  Therefore, we find that each of the four elements of negligent misrepresentation was established in this case by a preponderance of the evidence.  *See* **Hill**, 875 S.W.2d at 670; **Atkins**, 823 S.W.2d at 552; and **Merriman**, 599 S.W.2d at 556-57.

Dickson contends that the Sherrards' reliance on the representation that the brush "should not affect construction" was unreasonable, given their failure to follow the contract's suggestion to have their builder contact Dickson to learn the exact location of the brush. We disagree.  Regardless of whether the Sherrards should or should not have inquired into the exact

10

location of the brush, the contract statements under review constitute misrepresentations. We cannot ignore the existence or the consequences of these misrepresentations simply because of the contract's subsequent solicitation of further discussion.

Given the foregoing, we find that the evidence does not preponderate against the trial court's decision that Dickson is liable for negligent misrepresentation. In view of our disposition of this issue, and the fact that the trial court found Dickson liable for both "breach of contract and negligent misrepresentation" without further explanation, we deem it unnecessary to address the question of whether the contract was breached. In this case, the damages to which the Sherrards would be entitled are the same under both theories.

Dickson also argues that the trial court erred in finding him liable for violating the Act. The Sherrards, in turn, argue that the trial court correctly found that Dickson had violated the Act, but they insist that the court should have adjudged such violations to be knowing or willful, thus rendering Dickson potentially liable for treble damages, as well as the full amount of their attorney's fees and discretionary costs.

Again, we find no error on the part of the trial court. The record supports a finding of *negligent* -- not intentional -- misrepresentation on the part of Dickson. There was proof which, if believed, supports the trial court's implicit finding that Dickson had no intent to deceive the Sherrards. For example, Dickson testified that he had no knowledge of, nor was he

11

responsible for, any buried debris on the lot other than that which was contained in the brush pit. This testimony was obviously accredited by the trial court, *see* **Devorak**, 907 S.W.2d at 819, in view of the fact that it failed to find a knowing or willful violation of the Act or award treble damages and costs to the Sherrards. As noted earlier, the trial court was in the best position to assess the credibility of the witnesses[2], and such determinations are entitled to great weight on this appeal. **Massengale v. Massengale**, 915 S.W.2d 818, 819 (Tenn.App. 1995); **Bowman v. Bowman**, 836 S.W.2d 563, 566 (Tenn.App. 1991). We therefore find that the evidence does not preponderate against the trial court's failure to find that Dickson's actions were willful or knowing.

We believe, however, that Dickson's actions did fall within the range of "unfair or deceptive" conduct prohibited by the Act, T.C.A. § 47-18-101, *et seq.* Specifically, Dickson's misrepresentations regarding the location and extent of the brush, and its potential impact upon construction, were "deceptive to the consumer," as proscribed by T.C.A. § 47-18-104(b)(27). This court has recognized that the Act contemplates not only intentional conduct, but also negligent conduct. **Smith v. Scott Lewis Chevrolet, Inc.**, 843 S.W.2d 9, 13 (Tenn.App. 1992). In fact, in most cases brought under the Act, a

---

[2]We disagree with the Sherrards' contention that the trial court's failure to find a knowing or willful violation of the Act was not based upon its assessment of the credibility of the witnesses. It is clear that the trial court must have accredited Dickson's testimony that he was unaware of debris buried in areas other than in the brush pit. *See* **Devorak**, 907 S.W.2d at 819. Likewise, the trial court apparently gave some credence to Dickson's testimony to the effect that the brush pit's extension to widths up to 60 feet from the lot line at some points was inconsequential because it did so only in areas on which the house could not legally be constructed. **Id.**

12

plaintiff's recovery is limited to actual damages and reasonable attorney's fees. ***Brungard v. Caprice Records, Inc.***, 608 S.W.2d 585, 591 (Tenn.App. 1980). Since the proof does not preponderate against the conclusion that Dickson's misrepresentations were unintentional, the trial court did not err in finding Dickson liable for negligent, deceptive conduct that violated the Act.

The decision to award treble damages under the Act rests within the trial court's broad discretion. *See* T.C.A. § 47-18-109(a)(3)("...[i]f the court finds... a willful or knowing violation of this part, the court *may* award three (3) times the actual damages...") (emphasis added); ***Smith***, 843 S.W.2d at 12. That discretion does not come into play until the court has found a "willful or knowing violation."

The Sherrards rely on the unreported case of ***Brandon v. Dennis A. Winnett d/b/a Winnett Home Builders, Inc.***[3], for the proposition that double damages may be awarded in the case of negligent misrepresentation. ***Brandon*** is inapposite. There the trial court made a specific finding that the defendant willfully violated the Act. There is no such finding in this case. In any event, a decision to award more than actual damages under the Act lies within the sound discretion of the trial court, and depends upon the facts of each case. T.C.A. § 47-18-109(a)(3). In this case, we find no absue of discretion in the trial court's decision not to multiply the damages.

_____

[3]C/A No. 01A01-9411-CH-00592, 1995 WL 444385 (Tenn.App., W.S., filed July 28, 1995, Highers, J.)

13

By the same token, the trial court is vested with broad discretion in the allowance of attorney's fees and other costs under the Act. *See* T.C.A. § 47-18-109(a)(3)("...[the trial court] *may* provide such other relief as it considers necessary and proper.")(emphasis added); **Haverlah v. Memphis Aviation, Inc.**, 674 S.W.2d 297, 306 (Tenn.App. 1984). Furthermore, Rule 54.04 of the Tennessee Rules of Civil Procedure provides that costs of the type sought by the Sherrards "are allowable only in the court's discretion." *Id*. We find nothing in the record to indicate that the trial court abused its discretion regarding attorney's fees and other discretionary costs.

As an additional matter, the Sherrards take issue with the amount of damages awarded by the trial court. They contend that the proof established that they suffered a pecuniary loss of $51,011.06 as a proximate result of Dickson's misrepresentations, and that the evidence therefore preponderates against the trial court's award of $11,000.

We find that the amount of damages awarded by the trial court was appropriate and within the range established by the testimony at trial. It appears to us that the amount of $11,000 represents the proportion of the increased expenditure that the court found was applicable to brush that was buried "off the property line," for which Dickson was found to be responsible. As noted earlier, the trial court obviously found that there was no proof that Dickson was responsible for, or knowledgeable about, brush and other debris buried in other locations on the lot. On the contrary, the court's decision indicates that it

14

found Dickson responsible only for the material buried in the brush pit and, therefore, culpable only for a portion of the brush that actually interfered with the construction of the house. In other words, the trial court did not find Dickson responsible for the costs incurred by the Sherrards as a result of the subsurface material of which Dickson was not aware. Thus, we find no error in the decision of the trial court to limit its award of damages to $11,000.

Given the foregoing, we conclude that the trial court correctly decided all issues pertaining to the Sherrards' claims against Dickson.

V. *Dismissal of the Sherrards' Claims against Jones*

As a final matter, the Sherrards argue that the trial court erred in dismissing their complaint against Jones. They contend that a partnership existed between Dickson and Jones, and that Dickson's actions therefore should be imputed to Jones, rendering Jones jointly and severally liable for Dickson's breach of contract, misrepresentation, and violation of the Consumer Protection Act. Jones, on the other hand, argues that he and Dickson were merely co-owners of the property, and that the facts do not establish the existence of a partnership.

The burden of proof regarding a partnership rests on the party alleging its existence -- in this case, the Sherrards. *Pettes v. Yukon*, 912 S.W.2d 709, 715 (Tenn.App. 1995); *Mullins v. Evans*, 308 S.W.2d 494, 498 (Tenn.App. 1957); *Badger v. Boyd*, 65

15

S.W.2d 601, 608 (Tenn.App. 1933).  In assessing whether a partnership exists, "no one fact or circumstances [sic] is a conclusive test, but each case must be decided upon a consideration of the totality of all relevant facts." *Pettes*, 912 S.W.2d at 715 (citing *Roberts v. Lebanon Appliance Service*, 779 S.W.2d 793, 795 (Tenn. 1989)).  Furthermore,

> the existence of a partnership may be implied from the circumstances where it appears that the individuals involved have entered into a business relationship for profit, combining their property, labor, skill, experience, or money.

*Pettes*, 912 S.W.2d at 715 (quoting *Bass v. Bass*, 814 S.W.2d 38, 41 (Tenn. 1991)).

After reviewing the record, we have concluded that the proof does not establish the existence of a partnership between Jones and Dickson.  It is apparent that Jones was simply a co-owner or tenant in common with Dickson.  The mere fact that Jones was entitled to 30% of the profits realized from the sale of Lot 22 did not necessarily create a partnership between Dickson and Jones.  T.C.A. § 61-1-106(2) provides that

> [j]oint tenancy, tenancy in common, tenancy by the entireties, joint property, common property, or part ownership does not of itself establish a partnership, whether such coowners do or do not share any profits made by the use of the property.

*Id.*  In view of this provision, and the fact that Jones was involved in the development or sale of Lot 22 only to the extent

16

that he owned an interest in the property, we find that, "under the totality of all relevant facts," *Pettes*, 912 S.W.2d at 715, no partnership existed between Dickson and Jones such as to make him liable for damages in this case. Thus, the trial court properly dismissed the Sherrards' complaint against Jones.

## VI. *Conclusion*

It results that the judgment of the trial court is in all respects affirmed. Costs on appeal are assessed one-half to the Sherrards and one-half to Dickson. This case is remanded to the trial court for enforcement of the trial court's judgment and collection of costs assessed below, all pursuant to applicable law.

_____
Charles D. Susano, Jr., J.

CONCUR:

_____
Don T. McMurray, J.

_____
William H. Inman, Sr.J.