# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE

**FILED**

**February 27, 1998**

**Cecil W. Crowson**
**Appellate Court Clerk**

JAMES M. WEBB, SR. and )
RICKY L. MORROW, )
           )
           Plaintiffs/Appellants, )
           ) Davidson Chancery
           ) No. 94-873-I
VS. )
           ) Appeal No.
           ) 01A01-9512-CH-00566
MORTGAGE SYSTEMS CORPORATION, )
LARRY LATHAM AUCTIONEERS, INC., )
GEORGE A. HATCHER, SR., and )
OSIAS ENTERPRISES, INC., )
           )
           Defendants/Appellees. )

APPEAL FROM THE CHANCERY COURT FOR DAVIDSON COUNTY
AT NASHVILLE, TENNESSEE

THE HONORABLE IRVIN H. KILCREASE, JR., CHANCELLOR

For James M. Webb, Sr. and
Ricky L. Morrow:

J. Randall Hooper
Hooper & Hooper
Brentwood, Tennessee

For Larry Latham Auctioneers, Inc.:

Michael J. Vetter
Brewer, Krause, Brooks & Mills
Nashville, Tennessee

For George A. Hatcher, Sr.:

J. Russell Farrar
D. Todd Sholar
Nashville, Tennessee

For Osias Enterprises, Inc.:

E. Steele Clayton, IV
Bass, Berry & Sims
Nashville, Tennessee

## AFFIRMED AND REMANDED

WILLIAM C. KOCH, JR., JUDGE

# **O P I N I O N**

This appeal involves a dispute over representations concerning the availability of financing for a piece of commercial property sold at auction.  After losing their earnest money because their financing did not materialize, the successful bidders sued the owner of the property, the auctioneers, and a mortgage broker in the Chancery Court for Davidson County, alleging that they had misrepresented the availability of financing for the purchase.  The trial court granted the bidders a summary judgment against the mortgage broker but also granted a summary judgment to the property owner and the auctioneers with regard to the bidders' claims against them.  On this appeal, the bidders assert the summary dismissal of their claims against the property owner and the auctioneers was unwarranted.  We have determined that the material facts are not in dispute and that the property owner and the auctioneers are entitled to a judgment as a matter of law.  Accordingly, we affirm the trial court.

## **I.**

Osias Enterprises, Inc. ("Osias") decided to sell four pieces of Class B commercial property including the Rivergate Executive Center in Goodlettsville.  After Osias contracted with Larry Latham Auctioneers, Inc. ("Latham") to sell the properties at auction, Latham retained George A. Hatcher, a licensed Tennessee real estate broker and auctioneer, to sell the properties.  Latham's contract with Osias required Latham to assist with promoting the sale as well as conducting the auction.

Mortgage Systems Corporation ("Mortgage Systems") was one of the tenants in the Rivergate Executive Center.  When John D. Gregory, Jr., president of Mortgage Systems, learned that Osias was selling its commercial properties, he contacted Osias to offer financing for the auction.[1]  Osias accepted Mortgage Systems's offer, and Mr. Hatcher obtained the terms of the financing Mr. Gregory was offering in order to include them in the advertisements for the auction.  As part of the promotion of the sale, Osias paid for a marketing brochure, a marketing video, a due diligence package,

---

[1]Specifically, Mr. Gregory offered to provide financing on the following terms: 20% down, 7.75% interest, amortization up to thirty years, and a five or ten-year balloon.

and various newspaper advertisements. These materials contained the following representations concerning financing:

> Excellent Financing
>
> 20% down, 7.7% APR,
>
> 30 yr. amortization, 5-10 yr. Balloon
>
> Call John Gregory at
>
> Mortgage Systems Corporation
>
> 615-851-7410
>
> Applications are available in
> due diligence packages or by calling the
> Auction Information Center.

The due diligence package contained a copy of Mr. Gregory's letter to Osias offering the financing, as well as a blank financing application with instructions.

On September 26, 1993, both Ricky L. Morrow and James M. Webb, Sr. saw an advertisement for the auction. Mr. Morrow owned a grocery store and five other pieces of property leased to the United States Postal Service. Mr. Webb also owned and operated grocery stores and was a general partner in Webb Investment Company, Ltd. that owned a shopping center and two other commercial buildings. Messrs. Webb and Morrow discussed the auction and then called the Auction Information Center for a brochure. Mr. Webb also inspected the Rivergate Executive Center. Shortly thereafter, Messrs. Webb and Morrow received brochures about the properties and also obtained the due diligence package and videotape. All of these materials contained the description of the financing being offered by Mortgage Systems.

After deciding that the Rivergate Executive Center would be a good investment, Messrs. Webb and Morrow toured the property with an Osias employee. They also discussed Mortgage Systems with Mr. Hatcher who told them that "they" had "checked out" Mr. Gregory and that "they felt like he was okay" and that "they had done some big financing deals." Messrs. Webb and Morrow submitted their application for up to $2,000,000 in financing to Mortgage Systems and requested a written loan commitment before the auction. On October 18, 1993, Mr. Gregory informed Messrs. Webb and Morrow that their loan had been approved and that he would give them a written loan commitment before the auction on October 19, 1993. Mr. Gregory told them that Mortgage Systems "had a lender that was going to do

this," that "they had a lot of applications to process and that they were getting them out as fast as they could."

On the day of the auction, Mr. Gregory informed Mr. Webb that he would be unable to provide a commitment letter because it lacked one signature. He explained that the signature was only a formality and that they had been approved for a loan of up to $2,000,000. Mr. Webb informed Mr. Gregory that he and Mr. Morrow intended to submit a bid based on Mortgage Systems's financing, and Mr. Gregory informed him that they would have the written commitment by 9:00 a.m. the next morning. Messrs. Webb and Morrow were the successful bidders on the Rivergate Executive Center with a bid of $1,590,750, including a one percent buyer's premium. After the auction, they executed a sales contract and paid $159,075 as their earnest money deposit. The contract required that the closing take place no later than November 19, 1993. Mr. Gregory again informed Messrs. Webb and Morrow that they would receive a written loan commitment for eighty percent of the purchase price.

Instead of providing the written loan commitment as he had promised, Mr. Gregory informed Messrs. Webb and Morrow on the day following the auction that he was still working on the financing. Messrs. Webb and Morrow realized that they had a problem after a week passed without receiving the written loan commitment. Mr. Gregory finally informed them that he had been unable to obtain financing for them. When Messrs. Webb and Morrow attempted to obtain alternative financing, they discovered that lenders were not making loans on Class B office space. Accordingly, they were unable to close the sale of the property on November 19, 1993 and were required to forfeit their $159,075 earnest money deposit to Osias.

In March 1994, Messrs. Webb and Morrow sued Osias, Latham, and Mr. Hatcher for negligent misrepresentation, seeking rescission of the contract and restitution of their earnest money. They also sued Mortgage Systems for fraudulent and negligent misrepresentation and violation of the Tennessee Consumer Protection Act. When Mortgage Systems did not answer the complaint, Messrs. Webb and Morrow moved for a summary judgment on its claims of fraudulent and negligent misrepresentation. Osias, Latham, and Mr. Hatcher also moved for summary judgments with regard to the claims against them by Messrs. Webb and Morrow. On July 20, 1995, the trial court entered an order granting Osias, Latham, and Mr.

Hatcher a summary judgment, and on October 12, 1995, the trial court granted Messrs. Webb and Morrow a summary judgment against Mortgage Systems and awarded them a $190,321.86 judgment. Messrs. Webb and Morrow now appeal from the summary judgment dismissing their claims against Osias, Latham, and Mr. Hatcher.

## II.

Summary judgments enjoy no presumption of correctness on appeal. *See City of Tullahoma v. Bedford County*, 938 S.W.2d 408, 412 (Tenn. 1997); *McClung v. Delta Square Ltd. Partnership*, 937 S.W.2d 891, 894 (Tenn. 1996). Accordingly, reviewing courts must make a fresh determination concerning whether the requirements of Tenn. R. Civ. P. 56 have been satisfied. *See Hunter v. Brown*, 955 S.W.2d 49, 50-51 (Tenn. 1997); *Mason v. Seaton*, 942 S.W.2d 470, 472 (Tenn. 1997). Summary judgments are appropriate only when there are no genuine factual disputes with regard to the claim or defense embodied in the motion and when the moving party is entitled to a judgment as a matter of law. *See* Tenn. R. Civ. P. 56.04; *Bain v. Wells*, 936 S.W.2d 618, 622 (Tenn. 1997); *Carvell v. Bottoms*, 900 S.W.2d 23, 26 (Tenn. 1995).

Courts reviewing summary judgments must view the evidence in the light most favorable to the nonmoving party and must also draw all reasonable inferences in the nonmoving party's favor. *See Robinson v. Omer*, 952 S.W.2d 423, 426 (Tenn. 1997); *Mike v. Po Group, Inc.*, 937 S.W.2d 790, 792 (Tenn. 1996). Thus, a summary judgment should be granted only when the undisputed facts reasonably support one conclusion -- that the moving party is entitled to a judgment as a matter of law. *See McCall v. Wilder*, 913 S.W.2d 150, 153 (Tenn. 1995); *Carvell v. Bottoms*, 900 S.W.2d at 26. A party may obtain a summary judgment by demonstrating that the nonmoving party will be unable to prove an essential element of its case, *see Byrd v. Hall*, 847 S.W.2d 208, 212-13 (Tenn. 1993), because the inability to prove an essential element of a claim necessarily renders all other facts immaterial. *See Alexander v. Memphis Individual Practice Ass'n*, 870 S.W.2d 278, 280 (Tenn. 1993); *Strauss v. Wyatt, Tarrant, Combs, Gilbert & Milom*, 911 S.W.2d 727, 729 (Tenn. Ct. App. 1995).

**III.**

Messrs. Webb and Morrow take issue with the trial court's conclusion that representations attributed to Osias, Latham, and Mr. Hatcher do not, as a matter of law, support a claim for negligent misrepresentation. They insist that the trial court should not have granted the summary judgment because the statements in the promotional materials and Mr. Hatcher's comments led them to believe that they would be able to obtain financing from Mortgage Systems and that they could safely rely on Mortgage System's promises to provide financing.

In Tennessee, claims for negligent misrepresentation are based on Restatement (Second) of Torts § 552 (1977). *See Ritter v. Custom Chemicides, Inc.*, 912 S.W.2d 128, 130 (Tenn. 1995); *John Martin Co. v. Morse/Diesel, Inc.*, 819 S.W.2d 428, 431 (Tenn. 1991). To make out a claim for negligent misrepresentation, a plaintiff must prove that

> (1) the defendant was acting in the course of its business, profession, or employment, or in a transaction in which it had a pecuniary (as opposed to gratuitous) interest; and
>
> (2) the defendant supplied faulty information meant to guide others in their business transactions; and
>
> (3) the defendant failed to exercise reasonable care in obtaining or communicating the information; and
>
> (4) the plaintiff justifiably relied upon the information provided by the defendant.

*See Robinson v. Omer*, 952 S.W.2d at 427; *Hill v. John Banks Buick, Inc.*, 875 S.W.2d 667, 670 (Tenn. Ct. App. 1993). This appeal hinges on the sufficiency of the plaintiffs' proof with regard to the second and fourth elements of the cause of action.

We turn first to the requirement that the defendant must have supplied faulty information meant to guide others in their business transactions. Messrs. Webb and Morrow characterize the statements in the promotional materials concerning the availability of financing through Mortgage Systems as tantamount of a guarantee of financing for otherwise qualified prospective purchasers. This characterization cannot reasonably be supported by the plain wording of the materials. The representations relied on by Messrs. Webb and Morrow are nothing more than statements that Mortgage Systems was offering financing at the stated terms to

qualified persons and that persons interested in this financing should inquire further with Mortgage Systems.

The materials received by Messrs. Webb and Morrow clearly stated that the sales of the properties would not be contingent on financing. The materials did not require any specific type of financing to be eligible to bid at the auction. Persons desiring to participate in the auction were free to obtain financing from any source, and nothing in the materials stated or inferred that Mortgage Systems was the exclusive or even preferred lender for these properties. The materials made no representations concerning Mortgage Systems' reliability or solvency and did not promise that all persons seeking financing through Mortgage Systems would receive it. Accordingly, the materials promoting the auction contained no faulty information concerning the terms of the auction or the availability of financing for prospective bidders.

Mr. Hatcher's comments on the day before the sale to the effect that "they" thought that Mortgage Systems was "okay" and that Mortgage Systems "had done some big financing deals" are similarly not faulty information meant to guide others in their business transactions. These statements were, at most, personal observations and statements of opinion, and the record contains no evidence that the statements were inaccurate. Mr. Gregory had been in the residential mortgage business and had only recently began to arrange commercial mortgages. While Mr. Gregory might have been new to commercial real estate lending, the record contains no evidence that he had experienced any other business difficulties or that he was incapable of arranging the type of financing required for this auction. The simple fact that the financing for Messrs. Webb and Morrow fell through does not, by itself, prove that Mr. Hatcher's comments made about Mortgage Systems were inaccurate.

We turn next to the question of Messrs. Webb and Morrow's claim of justifiable reliance on both the statements in the promotional materials and Mr. Hatcher's comments on the day before the auction. Messrs. Webb and Morrow had been dealing directly with Mr. Gregory and Mortgage Systems for one week before the auction. There is no evidence that Osias, Latham, or Mr. Hatcher were involved in these discussions directly or indirectly. During this time, Messrs. Webb and Morrow had ample opportunity to inquire into Mortgage Systems business background and method of operation. By the time they submitted their bid on the

Rivergate Executive Center, Messrs. Webb and Morrow knew: (1) that the sale would not be contingent on financing, (2) that they had requested a formal, written loan commitment, (3) that Mortgage Systems was arranging the financing with another lender, and (4) that Mortgage Systems was not going to be able to provide them with the requested written loan commitment because it lacked one signature.

Messrs. Webb and Morrow signed the contract to purchase the Rivergate Executive Center based on Mr. Gregory's assurance that he had obtained financing for them. In light of the circumstances known to them when they bid on the property and signed the contract, no reasonable person could find that Messrs. Webb and Morrow were relying on any representation other than Mr. Gregory's representation that he had obtained their financing and that he would deliver their written loan commitment by 9:00 a.m. the next day. Neither the materials promoting the auction nor Mr. Hatcher's comments relieved Messrs. Webb and Morrow from exercising ordinary prudence and their sound business judgment. Accordingly, like the trial court, we have determined that Messrs. Webb and Morrow have not demonstrated that they will be able to prove that they justifiably relied on any representations made by either Osias, Latham, or Mr. Hatcher concerning Mortgage Systems or Mr. Gregory.

## IV.

We affirm the judgment and remand the case to the trial court for whatever further proceedings may be required. We also tax the costs of this appeal, jointly and severally, to James M. Webb, Sr. and Ricky L. Morrow and their surety for which execution, if necessary, may issue.

_____
WILLIAM C. KOCH, JR., JUDGE


CONCUR:


_____
HENRY F. TODD, PRESIDING JUDGE
MIDDLE SECTION


_____

SAMUEL L. LEWIS, JUDGE