IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
December 6, 2000 Session

## ALLIED SOUND, INC., v. EDDIE W. NEELY and JOHNNY JESS DAVIS

**Direct Appeal from the Circuit Court for Sevier County**
**No. 91-299-IV     Hon. O. Duane Slone, Circuit Judge**

**FILED MARCH 29, 2001**

**No. E2000-01095-COA-R3-CV**

In this action alleging misrepresentation, concealment and fraud, the Trial Court granted defendants summary judgment on the grounds that it was unreasonable for plaintiff to rely on any representations made by defendants. On appeal, we affirm.

**Tenn. R. App. P.3 Appeal as of Right; Judgment of the Circuit Court Affirmed.**

HERSCHEL PICKENS FRANKS, J., delivered the opinion of the court, in which HOUSTON M. GODDARD, P.J., concurred and CHARLES D. SUSANO, JR., J., concurred in part, dissented in part, and filed an opinion.

George F. Legg, and Eric J. Morrison, Knoxville, Tennessee, for Plaintiff-Appellant, Allied Sound, Inc.

Robert S. Stone and Katherine M. Hamilton, Knoxville, Tennessee, for Defendant-Appellee, Eddie W. Neely.

P. Edward Pratt, Knoxville, Tennessee, for Defendant-Appellee, Johnny Jess Davis.

**OPINION**

Plaintiff Allied Sound ("Allied") obtained a judgment against Kingdom Resort, Inc. ("KRI") in the amount of $725,000.00 for breach of contract. Allied could not collect this judgment because KRI later declared bankruptcy. Then Allied filed this suit against Eddie Neely and Jess

Davis, who were the owners of KRI, alleging misrepresentation, concealment and fraud.

In 1988, KRI was constructing a theatrical set in Sevier County to house an outdoor passion play, and Allied submitted a proposal for the installation of sound and lighting equipment for the project. KRI provided Allied with a letter of intent in February 1988 which stated that it would purchase the system from Allied contingent upon securing financing. Allied began ordering equipment and commenced some work on the project, and Link, president of Allied Sound, was made aware that the financing of the sound and lighting equipment would be done through a leasing company.

Link stated that Davis told him in March that the lease financing was "complete and available", but that they were working on another deal which could save them money. Link was later advised that KRI had selected Century Finance and that Allied should bill Century Finance for progress payments. Davis provided Link with a phone number for Steve Lundergan at Century Finance, and Lundergan represented that Century Finance had been selected and Lundergan would be handling the lease. It was Link's testimony that Lundergan told him to send the invoices, and that Allied would be paid. Link testified that he received a purchase order from Century on April 21 which stated that other documents would have to be executed by KRI in connection with the lease, but he did not inquire as to what those documents were. The lease stated that it was contingent upon a letter of credit being provided, but Link stated that he did not learn of the letter of credit requirement until July. Link further testified that he would not have moved forward with installation of the equipment had he known of the letter of credit requirement.

Allied worked on the project and submitted invoices to Century, which were never paid. Link met with Davis and Neely on May 4 to request progress payments on the job, but was told no funds were available. At that meeting, Link testified that Neely and Davis asked him to keep working because the money was set to come in at the end of the construction through the lease, and there was no provision for progress payments. The record establishes that KRI had been denied letters of credit by several banks as of May 4.

Summary Judgment was granted previously to Neely and Davis because Allied had recovered a judgment against KRI on the facts before the Court. On appeal, we reversed, finding that since corporations act through their agents, then "if KRI made misrepresentations, some individual or individuals had to make them for it." The Court further stated that Neely and Davis were the agents alleged to have made misrepresentations for KRI, and that "[t]here is nothing inconsistent between the misrepresentations charged in the instant case and the representations found in the earlier breach of contract case." This case was remanded for trial.

After remand, defendants again moved for summary judgment, which was granted, with the Trial Court holding it was unreasonable for Allied to rely upon any representations made by defendants on May 4.

On appeal, Allied insists that there is a disputed issue of material fact as to whether

the statements made by Davis constituted fraudulent misrepresentation, and whether Allied's reliance on the representations made by defendants was reasonable? Also, plaintiff insists that Davis' attorney should have been disqualified by the Trial Court.

In determining whether a genuine issue of material facts exists for purposes of summary judgment, we are required to take the strongest legitimate view of the evidence in favor of the non-moving party, and allow all reasonable inferences in favor of that party and discard all countervailing evidence. *Byrd v. Hall*, 847 S.W.2d 208 (Tenn. 1993).

Allied argues that there is a question of fact as to whether the statements made by Davis in March constituted fraudulent misrepresentations. According to Link, Davis represented that the financing was "complete and available", but that they were working on another deal which would save them money. Davis later told Link that they had selected Century Finance and Allied should bill Century Finance for the progress payments. At the time the statements were made, KRI was still negotiating with Century regarding the lease, and there were contingencies which KRI had not yet met.

To prove fraudulent misrepresentation, plaintiff must show that there was an intentional misrepresentation of a material fact, made with knowledge of its falsity or reckless disregard for its truth. *Hill v. John Banks Buick*, 875 S.W.2d 667 (Tenn. Ct. App. 1993.) The evidence establishes a disputed issue of material fact as to whether the financing was "complete and available" under the conditions existing between KRI and Century at that time. If, however, a misrepresentation was made in this regard, Allied must prove that it reasonably relied upon the misrepresentation to its detriment. *Id.*

In order to determine whether plaintiff's reliance upon Davis' statements was reasonable, several factors must be considered, including "the plaintiff's business expertise and sophistication", "the availability of the relevant information" and "the opportunity to discover the fraud." *City State Bank v. Dean Witter Reynolds, Inc.*, 948 S.W.2d 729, 737 (Tenn. Ct. App. 1996.) In this regard, Link admits that he was given the name and number of the person at Century Finance with whom the defendants had been dealing, and was invited to call and get more information. Link did speak with Lundergan at Century Finance, and according to Link, he was advised that Century Finance had been selected and that Lundergan would be handling the lease. Lundergan also told Link to send his invoices, and they would be paid. Link also acknowledged that he received a purchase order from Century on April 21 which stated that other documents were required from KRI in connection with the lease, but he did not inquire as to what those documents were. The purchase order specifically states in two places that other documents must be executed by KRI on or before a certain date, or the purchase order is "null and void."

From the undisputed material evidence and Link's testimony, we conclude that plaintiff's reliance on Davis' statement was unreasonable given the fact that plaintiff was put on notice at least by April 21 that there were some conditions on the lease, and should reasonably have inquired as to what those conditions were. Plaintiff had the means to obtain the information needed

and discover any "fraud" if he had simply asked Century for a copy of the actual lease agreement or inquired as to what additional documentation was required by Century before continuing the performance. While Link asserts that he had never been involved in a lease transaction before, he was an experienced business person, and on this record is charged with knowing there were contingencies to be met by a certain date in connection with the lease. Where information is reasonably discovered, and here where the plaintiff was invited to inquire, it cannot claim reasonable reliance upon a misrepresentation. In *Solomon v. First American National Bank of Nashville*, 774 S.W.2d 935 (Tenn. Ct. App.1989), this Court stated, "[g]enerally, a party dealing on equal terms with another is not justified in relying upon representations where the means of knowledge are readily within his reach."

The trial court also found that plaintiff's reliance on statements made by Neely and Davis at the May 4 meeting (that the money was set to come in at the end of construction) was not reasonable because plaintiff had been found to have notice of the letter of credit requirement by that time, and because Link had testified in his deposition that he would not have proceeded with the work if he had known of the letter of credit requirement. Allied concedes that it is bound by the previous ruling that it had notice of the letter of credit requirement by May 4, but argues that Link was not told that KRI had applied for a letter of credit at several different banks and been turned down. Link did not, however, enquire of Neely or Davis about the letter of credit requirement, or whether the contingencies in the lease had been fulfilled, even though he was charged with knowing of both conditions at that juncture. Link conceded he should not have gone forward with the work knowing that a contingency existed. Plaintiff's alleged reliance on defendants' statements were unreasonable, and we find summary judgment to be appropriate. In order to defeat summary judgment, the reasonableness of the reliance must amount to a genuine issue, not found here. *See: Annaco, Inc., v. Corbin*, 1998 WL 929637 (Tenn. Ct. App. 1998).

Plaintiff further argues that Davis' counsel should have been disqualified, because his law firm has merged with the law firm which represented Allied in its initial lawsuit against KRI. The Trial Judge refused to disqualify Davis' counsel. In Davis' response to plaintiff's Motion to Disqualify, supporting affidavits and documents were filed asserting that even though Davis' counsel's firm had merged with the firm which previously represented plaintiff in the first lawsuit against KRI, sufficient measures had been taken to protect client confidences such that no conflict existed. Plaintiff insists that Disciplinary Rule 4-101 and Disciplinary Rule 5-105 have been violated because Heiskell, Donelson represented Allied Sound in the first lawsuit and thus had substantial communications with Allied of a confidential nature, and further had "complete access to the records and files of Allied Sound." Plaintiff argues that this information could have related to the actions of Neely and Davis, and thus could be used against Allied in the present suit, and further relies on the case of *Manning v. Waring, Cox, James, Skylar and Allen*, 849 F.2d 222 (6th Cir. 1988), for the proposition of the presumption that an attorney shares his client's confidences with all members of his firm.

In that case, the Sixth Circuit adopted the test used by the Seventh Circuit in determining whether disqualification is warranted. The Court ruled that if the lawyer was privy to

confidences of the former client, and if there is a substantial relationship between the subject matter of the former and present representations, then the court must determine if the presumption of shared confidences has been rebutted. *Id.* One method of rebutting this presumption is to show that adequate screening measures have been instituted to prevent the flow of confidential information from the attorney to other members of the firm. *Id.*

In determining whether the presumption has been rebutted, the court is to consider "objective and verifiable evidence" on a "case-by-case basis." *Manning.* Factors to be considered include: 1) the size and structure of the law firm, 2) the likelihood of contact between the "infected" attorney and the attorneys responsible for the present representation, 3) rules which prevent the "infected" attorney from access to relevant files, and 4) whether the "infected" attorney will share in the fee from the present litigation. *Id.; see also* Formal Ethics Opinion 89-F-118 (adopting the standards set forth in *Manning*).

The issue in this case thus becomes whether the presumption has been rebutted. The Board of Professional Responsibility has opined that screening mechanisms should "be aimed at confining disqualification to the person who was involved in the substantially related matter and therefore infected with or tainted by privileged information which is the source of the ethical problem. Isolation of the infected person would allow the other lawyers and support personnel in the firm or office to assist in or conduct the questioned representation free from any taint or misuse of client confidences." Formal Ethics Opinion 89-F-118. The Board specifically approved screening mechanisms which forbid discussion of sensitive matters and limit availability of sensitive documents, restrict access to files, impose sanctions for breach of the mechanisms, and implement physical, organizational, and geographical barriers. *Id.*

Plaintiff relies upon the case of *Penn Mutual Life Insurance Co. v. Cleveland Mall Associates*, 841 F. Supp. 815 (E.D. Tenn. 1993). The District Court held that, following the merger of two law firms, it would be improper to allow two attorneys within the same, newly-merged firm to represent clients on different sides of an ongoing dispute. Thus, regardless of the screening mechanisms implemented, the court ordered that the firm should be disqualified. *Id.* In *Penn Mutual* and other cases which rely upon it, such as *Watson v. Ameredes*, 1997 WL 772865 (Tenn. Ct. App. 1997), there are two lawyers representing adverse parties in a current dispute who end up working within the same law firm. Such is not the case here.

At the outset, we note that Davis had no involvement whatsoever in the prior litigation, and was not called as a witness. In this case there are two attorneys[1] from Heiskell, Donelson who previously represented Allied in the first lawsuit against KRI, who then withdrew from representation of Allied following the resolution of that suit. Due to a law firm merger, these two attorneys now practice in the same firm with Pratt, who represents defendant Davis in this action. The attorneys state unequivocally that they have never discussed this case. However, we are

_____

[1] Another attorney for Heiskell, Donelson who represented Allied in the lawsuit against Century Finance is apparently now deceased.

-5-

required to determine whether sufficient screening mechanisms have been implemented to rebut the presumption of shared client confidences.

The attorneys involved here state in their affidavits that a conflict policy was adopted prior to and after the merger which institutes screening mechanisms for situations such as this. The screening mechanisms include limiting access to the files, limiting places where certain cases can be discussed, limiting the sharing of secretaries, and the implementation of a "Chinese" wall specifically between Pratt and the attorneys who formerly represented Allied. The attorneys further state that the files related to the former Allied representation are maintained in off-site storage, and the files related to the current Davis representation are maintained in the firm's Huntsville office where the infected attorneys have no access.

Disqualification is "a drastic remedy which should be used sparingly" and the trial court found that it was not warranted herein, thus inherently finding that the screening mechanisms implemented were sufficient to rebut the presumption of shared confidences. There is no suggestion in this record which disputes that these mechanisms have been effectively used in this case, and given the preference stated by the Board and the Courts that disqualification should be confined to only the infected attorneys, if possible, we conclude that the Trial Court's ruling on the disqualification issue was correct.

For the foregoing reasons, we affirm the judgment of the Trial Court and remand with the cost of the appeal assessed to Allied Sound..

_____
HERSCHEL PICKENS FRANKS, J.