IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
October 14, 2008 Session

# RURAL DEVELOPMENTS, LLC
v.
# JOHN H. TUCKER, CLARA TUCKER, GENE CARMAN REAL ESTATE AND AUCTIONS FAMILY PARTNERSHIP, LP d/b/a GENE CARMAN REAL ESTATE AND AUCTION, GENE CARMAN AND BARRY WITCHER

### Appeal from the Chancery Court of Macon County
No. 4035 C.K. Smith, Chancellor

_____

### No. M2008-00172-COA-R3-CV - Filed January 14, 2009

_____

This case involves allegations of intentional misrepresentation and associated causes of action all related to the sale of a spring for commercial development. Appellant contends that the output of the spring was misrepresented. The trial court granted summary judgment as to a number of causes of action, and the appellant then non-suited his remaining claims and appealed. For the reasons stated herein we affirm the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed.**

WALTER C. KURTZ, SR. J., delivered the opinion of the court, in which FRANK G. CLEMENT, JR., J., and ANDY D. BENNETT, J., joined.

Christopher J. Oliver and Laura M. Williams, Nashville, Tennessee, for the appellant Rural Developments, LLC.

B. Keith Williams and James R. Stocks, Lebanon, Tennessee, for the appellees John and Clara Tucker.

Robyn Beale Williams and Derrick A. Free, Nashville, Tennessee, for the appellees Gene Carman, Barry Witcher, Gene Carman Real Estate and Auction, and Gene Carman Real Estate and Auction Family Partnership, LP.

**OPINION**

## I.  Procedural Background

The corporate plaintiff/appellant, Rural Developments, LLC ("RD") purchased real property in order to commercially develop a spring on the land. RD is involved in the commercial sale of bottled water.  The lawsuit arose due to alleged misrepresentations made by the sellers (the "Tucker defendants") and the seller's agents (the "Carman defendants") to  RD related to the output of the spring.  RD contends that the Tucker and Carman defendants told RD before the sale that the spring produced 33,000 gallons of water per hour.  According to RD, after the sale it discovered that the actual output was 95% less (533 to 744 gallons per hour.); RD contends that it would never have purchased the land but for the misrepresentation. RD sought rescission and/or damages.

RD contended that allegations of false statements about the output of the spring entitled him to pursue the following causes of action:
1.      Misrepresentation
2.      Fraud in the inducement
3.      Negligent misrepresentation
4.      Intentional misrepresentation
5.      Breach of contract
6.      Frustration of purpose
7.      Negligence
8.      Unjust enrichment
9.      Tennessee Consumer Protection Act   (TCPA)
10.     Civil Conspiracy

The Tennessee Consumer Protection Act claim alleging deceptive acts was only alleged against the Carman defendants.

The events giving rise to this lawsuit occurred in May 2004.  The complaint was filed on June 1, 2005, and the second amended complaint was filed on March 16, 2007.

On November 26, 2007, RD filed a Motion for Summary Judgment on its claims for intentional misrepresentation, negligent misrepresentation, violation of TCPA, negligence, fraud in the inducement, frustration of purpose, and rescission of the contract.  The Carman and Tucker defendants also filed their Motions for Summary Judgment on November 26, 2007.

The cross Motions for Summary Judgment were heard on December 10, 2007.  At the hearing, counsel for all parties made oral arguments; the trial court itself, without objection, called several witnesses and heard their testimony.

The trial court denied RD's motion in its entirety.  The trial court then granted in part and denied in part the defendants' motions.  The court dismissed a number of the claims including the

2

TCPA claim against the Carman defendants. The court left intact several substantial claims.

Thus, after the ruling above, the remaining claims were:
1. Intentional misrepresentation against all defendants but only based on recklessness; and

2. Negligent misrepresentation against all defendants;
Although not a cause of action, the remedy of rescission remained before the court.

RD, being dissatisfied with the ruling of the court and in some confusion, as the case was set for trial the next day, non-suited the remaining claims.

The trial court's order contained this final summary of its action:
It is therefore ORDERED that the claims for breach of contract, frustration of purpose, negligence, unjust enrichment, fraud in the inducement (based on intentional or knowing acts); intentional misrepresentation (based on intentional or knowing acts); and civil conspiracy are dismissed as to the Tucker defendants. It is additionally ORDERED that the claims for negligence, civil conspiracy, intentional misrepresentation (based on intentional or knowing acts) and violation of the Tennessee Consumer Protection Act are dismissed as to the Carman defendants.
For purposes of clarification, the court finds that summary judgment is not appropriate in favor of the defendants on the following claims:
• Intentional Misrepresentation against all defendants (on the basis of recklessness only);
• Negligent Misrepresentation against all defendants; and
• Rescission against defendants John and Clara Tucker.
Subsequent to the summary judgment hearing on this matter, plaintiff filed a written Notice of Dismissal on December 11, 2007, advising the Court that it was taking a voluntary dismissal pursuant to Tenn. R. Civ. P. 41.01. As the remaining claims that the plaintiff alleged against all defendants have now been voluntarily dismissed, this Court, seeing no just reason for delay, enters this Order as a final Order on the dismissed claims pursuant to Tenn. R. Civ. P. 54.02.

Order of December 20, 2007. On January 18, 2008, RD filed its Notice of Appeal.

## II. Issues

Appellant RD states the issues as follows:

1. Whether the trial court erred on its ruling of limiting RD's

3

intentional misrepresentation claim by denying RD the opportunity to go forward on the theory of intentional misrepresentation on any basis other than the Tucker defendants' or the Carman defendants' recklessness.

2.  Whether the trial court erred in finding that RD's Tennessee Consumer Protection Act claim was barred by the Statute of Limitations.

3.  Whether the trial court erred in granting RD's motion for summary judgment on the Tennessee Consumer Protection Act claim against the Carman defendants, when there was a genuine issue of material fact as to whether defendants' conduct amounted to an unfair or deceptive act or practice resulting in an ascertainable loss of money to RD.

4.  Whether the trial court erred in dismissing RD's negligence claims against defendants on grounds that it was duplicative of RD's negligent misrepresentation claim.

5.  Whether the trial court erred in dismissing RD's frustration of purpose claim as a matter of law.

6.  Whether the trial court erred in limiting RD's fraudulent inducement claim against the Tucker defendants by denying it the opportunity to go forward on the theory of fraudulent inducement on any basis other than the reckless conduct of the defendants.

7.  Whether the trial court erred in conducting the summary judgment proceeding by eliciting and considering the live testimony of party witnesses sworn in and examined by the court during the hearing.

8.  Whether the trial court erred by directing the entry of judgment in accordance with Rule 54.02 of the Tennessee Rules of Civil Procedure without any discussion, argument, or determination as to whether there was just reason for delaying the entry of the judgment.

On the other hand, the Carman defendants state their issues as:

1.  Whether the trial court erred by denying summary judgment to Gene Carman, Barry Witcher, Gene Carman Real Estate and Auction, and Gene Carman

4

Real Estate and Auction Family Partnership, LP regarding RD's intentional misrepresentation claim in its entirety.

2. Whether the trial court erred by denying summary judgment to Gene Carman, Barry Witcher, Gene Carman Real Estate and Auction, and Gene Carman Real Estate and Auction Family Partnership, LP regarding RD's negligent misrepresentation claim.

3. Whether the trial court was correct in granting summary judgment to Gene Carman, Barry Witcher, Gene Carman Real Estate and Auction, and Gene Carman Real Estate and Auction Family Partnership, LP regarding RD's claim of negligence.

4. Whether the trial court was correct in granting summary judgment to Gene Carman Real Estate and Auction Family Partnership, LP regarding RD's claim of a Tennessee Consumer Protection Act violation.

The Tucker defendants simply state:

Whether the trial court properly granted summary judgment in favor of the Tucker appellees, or whether full summary judgment should have been granted in favor of the Tucker defendants.

The Court appreciates the above-stated issues, but after oral argument before this Court and consideration of the entire record, we cannot but conclude that the gravaman of the appeal is the finding of the trial court on summary judgment that the appellees did not act "intentionally and knowingly with regards to any representations made by them." The trial court's finding of no viable TCPA claim is also central to this appeal.

### III. Standard of Review

This Court's standard for reviewing a trial court's granting of a motion for summary judgment pursuant to Tenn. R. Civ. P. 56 has been stated often. "The party seeking a summary judgment bears the burden of demonstrating that no genuine dispute of material fact exists and that it is entitled to a judgment as a matter of law." *Ferguson v. Nationwide Prop. & Cas. Ins. Co.*, 218 S.W.3d 42, 48 (Tenn. Ct. App. 2006) (citations omitted). "In determining whether or not a genuine issue of material fact exists for purposes of summary judgment . . . the trial court must take the strongest legitimate view of the evidence in favor of the nonmoving party, allow all reasonable inferences in favor of that party, and discard all countervailing evidence." *Byrd v. Hall*, 847 S.W.2d 208, 210-11 (Tenn. 1993) (citations omitted).

"When the party seeking summary judgment makes a properly supported motion, the burden shifts to the nonmoving party to set forth specific facts establishing the existence of disputed,

material facts which must be resolved by the trier of fact." *Bain v. Wells*, 936 S.W.2d 618, 622 (Tenn. 1997) (*citing Byrd,* 847 S.W.2d at 215). "If a factual dispute exists, we must then determine whether the fact is material to the claim or defense upon which the summary judgment is predicated and whether the disputed fact creates a genuine issue for trial." *Cantrell v. Dekalb County,* 78 S.W.3d 902, 905 (Tenn. Ct. App. 2001) (citations omitted).

"Summary judgment is not a disfavored procedural device and may be used to conclude any civil case, including negligence cases, that can be and should be resolved on legal issues alone[.]" *Fruge v. Doe*, 952 S.W.2d 408, 410 (Tenn. 1997). It is not, however, a substitute for "the trial of issues of fact." *Id.* "Summary judgment is only appropriate when the facts and the legal conclusions drawn from the facts reasonably permit only one conclusion." *Richberger v. West Clinic, P.C.*, 152 S.W.3d 505, 510 (Tenn. Ct. App. 2004) (citations omitted). We review a trial court's award of summary judgment *de novo* without attaching any presumption of correctness to the decision below, "and the task of the appellate court is confined to reviewing the record to determine whether the requirements for summary judgment have been met." *Keasler v. Estate of Keasler*, 973 S.W.2d 213, 217 (Tenn. Ct. App. 1997) (*citing Carvell v. Bottoms*, 900 S.W.2d 23, 26 (Tenn. 1995)); See also *Martin v. Norfolk Southern*, ____ S.W.3d ____ , 2008 WL 4963512 (Tenn. Nov. 14, 2008).

## IV.  Factual Background

Plaintiff/appellant RD and its employee John Cook develop property containing natural springs for commercial use. RD previously developed property containing water sources, and this water was bottled under numerous brand names, such as Nestle Pure Life. Mr. Cook was employed by Nestle from June 8, 2001, to September 20, 2004, as Nestle's project manager for Tennessee.

John H. Tucker and his wife Clara Tucker ("Tucker defendants") were the owners of a farm consisting of more than 137 acres. The Tuckers decided to sell their farm and engaged Gene Carman Real Estate and Auction and Barry Witcher to sell their farm in twenty-five tracts at an absolute auction held on May 8, 2004 (collectively Gene Carman Real Estate and Auctions Family Partnership, LP d/b/a Gene Carman Real Estate and Auction, Gene Carman d/b/a Gene Carman Real Estate and Auction, Gene Carman, and Barry Witcher are referred to as the "Carman appellees.")

Gene Carman has been a realtor and auctioneer since 1960. At the time of the sale of the subject property Gene Carman was a sole proprietor of Gene Carman Real Estate and Auction. Barry Witcher has been a realtor since 1977 and an agent and broker with Gene Carman Real Estate and Auction since 1978. The Tuckers hired Gene Carman Real Estate and Auction to advertise and sell 137.91 acres in 25 tracts at absolute auction on May 8, 2004.

Mr. Witcher contacted Mr. Cook and informed him of the availability of the property containing the spring and its alleged output. According to Mr. Cook, Mr. Witcher said that the spring had been tested and produced 33,000 gallons of water per hour. Mr. Witcher reported that he previously heard this statement while he was at the Tucker's farm gathering information for the advertisement for the auction. This information was supposedly supplied to Mr. Witcher by the Tucker's son Michael in the presence of Mr. Tucker. Michael was the initiator of the sale of the land and the person who contacted Barry Witcher on behalf of his parents. Michael represented himself

as the spokesman and as acting on behalf of his parents.

After being contacted by Barry Witcher and prior to the sale, John Cook drove to the property and told Mr. Tucker that he would "like to see that spring that was putting out 33,000 gallon[s] an hour." In response, Mr. Tucker drove Mr. Cook to look at the spring; it was covered that day. Mr. Cook did not remove the cover, looked around, but took no further action to inspect the spring.

The Carmans promoted the auction with a written advertisement. The advertisement included a statement that "one tract features an abundant spring (reportedly measured at 33,000 gallons per hour output!)." The advertisement also specifically disclaimed that " any announcements made day of sale take precedence over any advertising."

On May 8, 2004, Mr. Cook attended the auction and purchased approximately 18 individual tracts for sale from the Tuckers' farm. At the auction on that date, a handbill announcement was distributed regarding the auction and Mr. Cook picked up a copy of this. The handbill included the following statement:

> INSPECTIONS: We invite & encourage you to perform any type of inspection that you would deem needful prior to the sale. This property is being sold **"AS IS - WHERE IS"** IN ITS PRESENT CONDITION.

The handbill also included a statement informing buyers of the restrictive covenants that were being attached to the land upon sale of the lots. Included within that language was the statement that "[t]his property is being sold for single family residences only."

According to Mr. Cook, during bidding at the auction Gene Carman again announced the description of the spring as producing 33,000 gallons of water per hour as the tract was being bid upon. RD points out that John and Clara Tucker were present at the auction and made no effort to correct Gene Carman's incorrect statements. RD also points out that there is further support in the record that the appellee Tuckers were aware of the use of the $33,000 gallon per hour output in an effort to market the land. According to Carman and Witcher, the Tuckers knew of its use in the advertisements and wanted it communicated to Mr. Cook.

## V.  TCPA Claim

RD's cause of action under the TCPA is subject to the one-year statute of limitations prescribed by Tenn. Code Ann. § 47-18-110. RD discovered the misrepresentation giving rise to this claim approximately 30 days after closing on the property. The sale occurred on May 8, 2004.

RD did not file its action for violation of the TCPA against Gene Carman Real Estate and Auction until June 13, 2006, almost two years after discovering what it claims was the alleged misrepresentation. Appellant RD did not file its action for violation of the TCPA against Mr. Carman and Mr. Witcher until March 15, 2007 - almost three years after discovering what it claims

7

was the alleged misrepresentation.

RD says it did not fully learn of the misrepresentations until it took the deposition of John and Clara Tucker in April 2006 and, thus, can rely on the discovery rule. RD contends that it was only then did it learn that the Tuckers were claiming not to be the source of the false information and that the Carman defendants acted on their own to make the false misrepresentations. The assertion is untenable.

Mr. Cook knew of the advertisements and verbal assertions regarding the 33,000 gallon per hour output in May 2004. He knew by July 2004 that these assertions were decidedly not true and that his company was damaged. Furthermore, he knew the source of these statements was the Carman defendants, the Tuckers or both. He cannot rely on the discovery rule to extend the one-year statute of limitations.

Under the discovery rule, the cause of action accrues and the statute of limitations begins to run when the injury occurs or is discovered or when, in the exercise of reasonable diligence, it should have been discovered. The above reasonable diligence also extends to the identification of the tortfeasor. *Teeter v. Curry*, 518 S.W.2d 512, 515 (Tenn. 1974); *Doe v. Catholic Bishop for Diocese of Memphis*, 2008 WL 4253628, at *4-5 (Tenn. Ct. App. Sept. 16, 2008). *See also Schmank v. Sonic Auto Ins.*, 2008 WL 2078076, at *2 - 5 (Tenn. Ct. App. May 16, 2008) (extended discussion of discovery rule, its parameters, and application to TCPA claim).

Here there is no question that Mr. Cook knew of the injury in the Summer of 2004, and either knew the source of the false information or was on inquiry notice as to the source.

## VI.  Intentional Misrepresentation

The Supreme Court of Tennessee describes the cause of action for intentional misrepresentation as follows:

> In order to prove a claim based on fraudulent or intentional misrepresentation, a plaintiff must show that:
> 1) the defendant made a representation of an existing or past fact;  2) the representation was false when made;  3) the representation was in regard to a material fact; 4) the false representation was made either knowingly or without belief in its truth or recklessly; 5) plaintiff reasonably relied on the misrepresented material fact; 6) plaintiff suffered damage as a result of the misrepresentation.

*Walker v. Sunrise Pontiac-GMC Truck*, 249 S.W.3d 301, 311 (Tenn. 2008). See T.P.I. - Civil § 8.36.

The above is sometimes augmented by principles of misrepresentation by concealment which is stated as:
> 1.      The defendant concealed or suppressed a material fact;

8

2. The defendant was under a duty to disclose the fact to the plaintiff;

3. The defendant intentionally concealed or suppressed the fact with the intent to deceive the plaintiff;

4. The plaintiff was not aware of the fact and would have acted differently if the plaintiff knew of the concealed or suppressed fact; and

5. As a result of the concealment or suppression of the fact, the plaintiff sustained damage.

T.P.I. - Civil § 8.38. *See Body Inv. v. Core Sovents*, 2007 WL 2198230, at *6 (Tenn. Ct. App. July 26, 2007.)

On appeal of this issue the Court faces an unusual nuisance: the trial judge did **not** dismiss the intentional misrepresentation cause of action. Instead, the trial judge ruled that the cause of action could only be supported by recklessness. The judge found, by way of granting partial summary judgment, that as a matter of law RD had failed to show that the alleged false statements were "knowingly" or "willfully" false.

The Court finds that the trial court was correct in the ruling but not for the reasons articulated. An appellate court may affirm a judgment on different grounds than those relied upon by the trial court when the trial court reaches the correct result. *Lewis v. NewsChannel 5*, 238 S.W.3d 270, 302 n. 31 (Tenn. Ct. App. 2007.)[1] Assume for the sake of argument that there was proof of willfulness or of a knowing false statement, this claim still fails as the facts clearly show that RD will be unable to prove reliance.

RD cannot prevail on this claim because it failed to establish that it "reasonably relied" upon representations by these defendants. In *Solomon v. First American Bank of Nashville*, 774 S.W.2d 935, 943 (Tenn. Ct. App. 1989), this Court stated, "[G]enerally, a party dealing on equal terms with another is not justified in relying upon representations where the means of knowledge are readily within his reach."

Judge Franks, speaking for this Court, has recently explained this rule in an analogous fact situation.

> To prove fraudulent misrepresentation, plaintiff must show that there was an intentional misrepresentation of a material fact, made with knowledge of its falsity or reckless disregard for its truth.

---

[1] RD asserts that it was inappropriate for the court to grant partial summary judgment as to a portion of a claim, citing *National Found v. M.R. Dillards*, 1989 WL 153880, at *8 (Tenn. Ct. App. 1989.) The applicable rule, however, allows a partial summary judgment as to part of a claim. Tenn. R. Civ. P. § 56.02. *See Roger Vasselin v. Marriott Intern*, 2006 WL 2038291, at *2-3 (M.D. Cal. July 19, 2006.)

*Hill v. John Banks Buick*, 875 S.W.2d 667 ( Tenn. Ct. App. 1993). The evidence establishes a disputed issue of material fact as to whether the financing was "complete and available" under the conditions existing between KRI and Century at that time. If, however, a misrepresentation was made in this regard, Allied must prove that it reasonably relied upon the misrepresentation to its detriment. *Id.*

In order to determine whether plaintiff's reliance upon Davis' statements was reasonable, several factors must be considered, including "the plaintiff's business expertise and sophistication," the "availability of the relevant information" and "the opportunity to discover the fraud." *City State Bank v. Dean Witter Reynolds, Inc.,* 948 S.W.2d 729, 737 (Tenn. Ct. App. 1996). In this regard, Link admits that he was given the name and number of the person at Century Finance with whom the defendants had been dealing, and was invited to call and get more information. Link did speak with Lundergan at Century Finance, and according to Link, he was advised that Century Finance had been selected and that Lundergan would be handling the lease. Lundergan also told Link to send his invoices, and they would be paid. Link also acknowledged that he received a purchase order from Century on April 21 which stated that other documents were required from KRI in connection with the lease, but did not inquire as to what those documents were. The purchase order specifically states in two places that other document must be executed by KRI on or before a certain date, or the purchase order is "null and void."

From the undisputed material evidence and Link's testimony, we conclude that plaintiff's reliance on Davis' statement was unreasonable given the fact that plaintiff was put on notice at least by April 21 that there were some conditions on the lease, and should reasonably have inquired as to what those conditions were. Plaintiff had the means to obtain the information needed and discover any "fraud" if he had simply asked Century for a copy of the actual lease agreement or inquired as to what additional documentation was required by Century before continuing the performance. While Link assents that he had never been involved in a lease transaction before, he was an experienced business person, and on this record is charged with knowing there were contingencies to be met by a certain date in connection with the lease. Where information is reasonably discovered, and here where the plaintiff was invited to inquire, it cannot claim reasonable reliance upon a misrepresentation. In *Solomon v. First American National Bank of Nashville*, 774 S.W.2d 935 (Tenn. Ct. App. 1989), this Court stated, "[G]enerally, a party dealing on equal terms with another is not justified in relying upon representations where the means of knowledge are readily within his

10

reach."

The trial court also found that plaintiff's reliance on statements made by Neely and Davis at the May 4 meeting (that the money was set to come in at the end of construction) was not reasonable because plaintiff had been found to have notice of the letter of credit requirement. Allied concedes that it is bound by the previous ruling that it had notice of the letter of credit requirement by May 4, but argues that Link was not told that KRI had applied for a letter of credit at several different banks and been turned down. Link did not, however, inquire of Neely or Davis about the letter of credit requirement, or whether the contingencies in the lease had been fulfilled, even though he was charged with knowing of both conditions at that juncture. Link concedes he should not have gone forward with the work knowing that a contingency existed. Plaintiff's alleged reliance on defendants' statements [was] unreasonable, and we find summary judgment to be appropriate. In order to defeat summary judgment, the reasonableness of the reliance must amount to a genuine issue, [which is] not found here. *See Annaco, Inc. v. Corbin*, 1998 WL 929637 (Tenn. Ct. App. 1998).

*Allied Sound, Inc. v. Neely*, 58 S.W.3d 119, 122-123 (Tenn. Ct. App. 2001).

Here Mr. Cook actually went to the spring but only observed. He was again invited to inspect the spring but did not. Mr. Cook was knowledgeable in the commercial development of springs. The spring was at the very core of this sale, yet Mr. Cook failed to closely inspect it or measure its output.

Where the means of information are at hand and equally accessible to both parties so that, with ordinary prudence or diligence, they might rely on their own judgment, generally they must be presumed to have done so, or, if they have not informed themselves, they must abide the consequences of their own inattention and carelessness. Unless the representations are such as are calculated to lull the suspicions of a careful man into a complete reliance thereon, it is commonly held, in the absence of special circumstances, that, where the means of knowledge are readily available, and the vendor or purchaser, as the case may be, has the opportunity by investigation or inspection to discover the truth with respect to matters concealed or misrepresented, without prevention or hindrance by the other party, of which opportunity he is or should be aware, and where he nevertheless fails to exercise that opportunity and to discover the truth, he cannot thereafter assail the validity of the contract for fraud, misrepresentation or concealment with respect to matters which should have been ascertained. . .

11

*Winstead v. First Tennessee Bank*, 709 S.W.2d 627, 631 (Tenn. Ct. App. 1986). *See also Daniels v. Basch*, 2005 WL 2860177, at *5-6 (Tenn. Ct. App. Oct. 27, 2005.)

While we may question the efficiency of dissecting a cause of action by the granting of a partial summary judgment in the manner herein, we do not find the judgment of the trial judge to be erroneous.

### VII.  Negligence Claim

The trial court dismissed RD's separately pled negligence claim against appellees as being duplicitous of the negligent misrepresentation claim.  Indeed, the only basis for the purported negligence claim against Tucker defendants stated in the second amended complaint was that the defendants allegedly breached a "duty by negligently representing the flow of the spring in question." Thus, the only negligent act alleged against the Tucker defendants was that they purportedly negligently misrepresented the flow of the spring.

It is clear that this claim is duplicitous to the negligent misrepresentation claim.  The trial judge acted correctly in dismissing it.  The two causes of action have the same lynchpin theory of liability and are thus duplicidous. 61 Am.Jur.2d *Pleading* § 53 (duplicitous pleadings). Furthermore, and more importantly, the negligence claim is subject to dismissal under the economic loss doctrine. *AmSouth Erectors v. Skaggs Iron Works*, 2003 WL 21878540, at *4 (Tenn. Ct. App, Aug. 15, 2003); *United Textile Workers and Lear Siegler Seating Corp*, 825 S.W.2d 83 (Tenn. Ct. App. 1990).  In any event there is no prejudice to appellant RD, as the trial judge did not dismiss the negligent misrepresentation claim.

### VIII.  Frustration of Purpose

The doctrine of frustration of purpose only applies in cases of the most extreme hardship where there has been an unanticipated circumstance that, under the equities at play, justify placing the risk of avoidance of the contract on the party not claiming frustration of purposes.

> The question in cases involving frustration is whether the equities of the case, considered in light of sound public policy, require placing the risk of a disruption or complete destruction of the contract equilibrium on defendant or plaintiff under the circumstances of a given case (citations omitted) and the answer depends on whether an unanticipated circumstance, the risk of which should not be fairly thrown on the promisor, has made performance vitally different from what was reasonably to be expected. . . The purpose of a contract is to place the risks of performance upon the promisor, and the relation of the parties, terms of the contract, and circumstances surrounding its formation must be examined to determine whether it can be fairly inferred that the risk of the event that has supervened to cause the alleged frustration was not reasonably foreseeable.  If it was

foreseeable, there should have been provision for it in the contract, and the absence of such a provision gives rise to the inference that the risk was assumed**.**

*North American Capital Corporation v. Mc Cants*, 510 S.W.2d 901, 903-904 (Tenn. 1974).

The doctrine is discussed in detail in Farnsworth, *Farnsworth on Contracts* § 9.7 *et seq.* (2004.) The doctrine, when applied, has been invoked to negate contractual obligations in circumstances where unanticipated events, like newly-enacted regulation or illness of a performance interfere with expectations. Among its requirements is that "the frustration must have resulted without the fault of the party seeking to be excused." *Farnsworth* § 9.7 at 652-53. Here we have already determined that the party did not rely on the alleged misrepresentation through Mr. Cook's inaction. Additionally, both parties must share the basic assumption that is frustrated. *Id.* Since RD contends that he was purposely or negligently misinformed about the output of the spring then clearly both parties did not share the same assumption. And finally, the application of the doctrine is one of law for the court, *Id.*, and we are not constrained to say that the chancellor's ruling was without his discretion. The above discussion with reference to *Farnsworth* is consistent with the principles stated by Chief Justice Dyer in *McCants.*

The trial judge committed no error in dismissing the claim for frustration of purpose.

### IX.   Summary Judgment Procedure

RD has asserted as error the fact that the trial judge called several witnesses to testify at the hearing on the summary judgment motion. This Court agrees with RD that this action was irregular. One prior case holds:

> As to the issue one, EJCE contends that the trial court erred in permitting testimony from live witnesses on behalf of Rayburn, over objection of counsel for the EJCE, during oral argument on Rayburn's motion for summary judgment. We must agree and will disregard all oral proof for purposes of reviewing this case. [Tenn. R. Civ. P. 56.03] clearly states that the Court is to use "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," to determine whether the granting of a motion for summary judgment is proper. There is no mention in this Rule of the use of testimony of live witnesses because the Rule simply does not permit that kind of proof in this type of hearing. *Evco Corp. v. Ross,* 528 S.W.2d 20 (Tenn. 1975). Should we allow oral testimony to be taken during hearings on motions for summary judgment, it would likely turn these hearings into "mini trials." The purpose of Rule 56 is "to provide a quick, inexpensive means of concluding cases, in whole or part, upon issues as to which there is no genuine dispute regarding material facts." *Byrd v. Hall*, 847 S.W.2d 208 (Tenn. 1993.) A "mini trial" of this type would directly

13

contravene the above articulated purposes of Rule 56 by increasing the length and, in all likelihood, the cost of these motion hearings.

*Rayburn v. E.J. Const.,* 2004 WL 27616, at *2 (Tenn. Ct. App. Feb. 3, 1995.) Federal case law does not absolutely forbid the procedure but does state that it should be done "sparingly and with great care." Wright, Miller & Kane, *Federal Practice and Procedure, Civil*, § 2723 at 387 (1998.)

RD, however, failed to object. The law specifically addresses occasions when a judge calls a witness. TRE 614. Then, "if counsel fails to object at all or to object at the next available opportunity, the issue is often deemed waived." Cohen, Shepard & Paine, *Tennessee Law of Evidence* § 614 [4], p. 6-156 (2005). This is in keeping with the general principle that one cannot benefit from an error to which he has not objected. *Id.* at § 103[4]; *See also* Tenn. R. Evidence 103; Tenn. R. App. P. 36(a).[2]

In the absence of the objection, the Court finds no reversible error. This Court furthermore has not found the live testimony at the summary judgment hearing to be dispositive but has determined this appeal on the written record that was before the trial court.

## X.  Entry of the Final Order

RD asserts that it was error for the trial judge to certify his judgment as final under Tenn. R. Civ. P. 54.02 without allowing RD to object and be heard. It was, of course, appellant RD who non-suited all remaining claims after the summary judgment ruling. The Court is hard pressed to see any prejudice to RD or, given the nonsuit of the remaining claim, what other alternative was available to the trial judge. There was no error under these circumstances to the entry of a final order.

## XI.   Appellees' Appeal

The defendants have briefed and argued their assertion that the trial judge should have dismissed all of RD's claims. These remaining claims were non-suited, and therefore there is nothing before this Court to resolve.

## CONCLUSION

For the reasons stated above, the judgment of the trial court is affirmed. Costs of this appeal are taxed to appellant RD and its surety for which let execution may issue if necessary.

_____
Walter C. Kurtz, Senior Judge

---

[2]

Appellant makes reference to this testimony in his brief, but he fails to explain how considerations of this testimony would have impacted the result.