NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 06a0637n.06
Filed: August 24, 2006

No. 05-6501

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

ERNEST L. JACKSON ET AL.,                    )
                                             )        ON APPEAL FROM THE
            Plaintiffs-Appellants,           )        UNITED STATES DISTRICT
                                             )        COURT FOR THE EASTERN
v.                                           )        DISTRICT OF TENNESSEE
                                             )
ALSTOM POWER, INC.,                          )                   O P I N I O N
                                             )
            Defendant-Appellee.              )

BEFORE:    SILER, McKEAGUE, and GRIFFIN, Circuit Judges.

    **McKEAGUE, Circuit Judge.**  Plaintiffs-Appellants (the "Appellants") claim that they

resigned from Defendant-Appellee Alstom Power, Inc. ("Alstom") based upon the fraudulent and

negligent misrepresentations it made to them about its plan to offer separation pay.  The district

court granted summary judgment to Alstom, finding that there was insufficient evidence that the

company made any misrepresentation to the Appellants.  Upon review of the record, we agree.

I.

    Alstom is the American subsidiary of ALSTOM, an international company headquartered

in France.  The Appellants in this case are eight former long-term, salaried employees of Alstom.[1]

_____

[1]Three of the original plaintiffs did not appeal the district court's judgment.

They all worked at the company's Chattanooga, Tennessee facility. The facility designs and manufactures equipment for the power industry.

In Spring 2003, Alstom found itself in a desperate financial position. Alstom and its French parent were on the verge of bankruptcy. In March, the company informed employees that its pension plan was under-funded, and, although the plan was federally insured, a bankruptcy could result in a reduction in benefits and the elimination of certain distribution options, including the lump-sum payment option. Thus, retirement-age salaried employees, including the Appellants, faced a choice: (a) retire in the near future and avert the risk of bankruptcy, thereby preserving their entire pension benefit as well as the right to take the benefit in a lump sum; or (b) stay with the company, continue to receive their full salary, and take the risk of bankruptcy and a lower pension benefit without the lump-sum distribution option. To offset some of the financial loss from taking an early retirement, the Appellants asked whether Alstom planned to offer separation pay to early retirees, as it had on occasion in the past.

Alstom management considered whether to offer voluntary separation pay. In April 2003, David Breckinridge, General Manager of the Chattanooga facility, wrote in an email to Jeff Sizer, General Manager of Performance Projects:

> We are going to see a significant reduction in salaried headcount based on what I am hearing due to pension concerns. The only thing holding people back is to see if we are going to offer a voluntary layoff plan. We need to decide if we want to wait them out or go ahead and offer it. My guess is we would get at least 20 people if we offered a voluntary program right now. I just hate to have to pay $1m (20 x $50K) for people to leave if they're going to [leave] anyway.

At the direction of Breckinridge, Robin Sentell, Director of Human Resources of the Chattanooga facility, developed a proposal for a voluntary layoff plan, targeting fifteen to twenty total positions. Breckinridge forwarded the proposal to Sizer in early May. The company decided against offering the plan at the time, according to Breckinridge:

> Well, I think at the time we came to the conclusion with all the uncertainty that was going on in our business – because it's important to understand what was happening. We had – we were in the middle of a union contract negotiation which was very disruptive to the overall business. We had a lot of issues going on with Alstom at the time that there was a lot of uncertainty and we just decided that at this point in time, offering such a program in the middle of all that uncertainty was the wrong time.

He testified that there was a possibility the company would offer a plan in the future, but only after its financial picture became clearer and the union negotiations were finished.[2]

If asked by employees whether the company planned to offer voluntary separation pay, Breckinridge told his managers to respond, "that at this current time we're not offering a voluntary separation." As expected, employees did approach their managers in Spring 2003 about separation pay. Jesse Vann's supervisor told him that there were no plans to offer separation pay and that the company, due to the financial situation, was not able to offer a plan. Jack Bryden asked his manager whether the company would offer voluntary separation pay, and his manager responded, "absolutely not, not with the financial condition of the company right now." James McCamy's manager told him that he did not think separation pay would be offered. The other Appellants testified to hearing similar comments from their managers and co-workers.

---

[2]Both Sizer and Breckinridge testified that Tom Pajonas, Managing Director, would have had to approve any voluntary separation pay plan. There is nothing in the record to suggest that Pajonas approved (or even reviewed) the proposal.

The Appellants assert that, based upon management's representations, they chose to retire in order to preserve their pension benefit. They all retired by August 1, 2003.

That same month, the French government announced its financial bailout of ALSTOM. Despite the bailout, further reductions at the Chattanooga facility were needed. Sometime in August or September,[3] the company decided to offer voluntary separation pay to several employees to encourage them to retire. It asked the early retirees to keep the separation pay confidential, because other retiring employees were not eligible. The employees who received the separation pay all retired sometime on or after September 30, 2003.

Shortly after the company offered the separation pay, some of the recent retirees found out about the pay. In March 2004, the Appellants filed suit in Hamilton County (Tennessee) Circuit Court, asserting state law causes of action for fraudulent misrepresentation and negligent misrepresentation. After removing the case to federal court,[4] Alstom moved for summary judgment. The district court granted the motion, concluding that there was no showing of a misrepresentation by the company.

The Appellants timely appealed.

---

[3]At some point before deciding to offer separation pay, the company signed a contract with the union.

[4]Alstom argued that the district court had federal-question jurisdiction because the case involved a plan governed by the Employee Retirement Income Security Act of 1974 ("ERISA"). The district court disagreed, but did find that it had diversity jurisdiction.

**II.**

The question on appeal is whether the Appellants have offered sufficient evidence of a misrepresentation by Alstom's management, a necessary element of both their fraudulent misrepresentation and negligent misrepresentation causes of action. In brief, they have not.

**A.**     **Summary Judgment Under Fed. R. Civ. P. 56**

We review a district court's grant of summary judgment *de novo*. *Burns v. Coca-Cola Enters., Inc.*, 222 F.3d 247, 252 (6th Cir. 2000). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). We consider the evidence and draw all reasonable inferences in favor of the Appellants, as the non-moving parties. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The Appellants are not, however, entitled to a trial merely on the basis of their allegations, but must come forward with some significant, probative evidence to support their claims. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). If they fail to make a sufficient showing on an essential issue of their case, Alstom will be entitled to summary judgment. *Id*. at 323.

**B.**     **Misrepresentation**

To prove fraudulent misrepresentation under Tennessee law, a plaintiff must show that: (1) the defendant made a misrepresentation of an existing or past fact, or if the claim is based on

promissory fraud, that it made a misrepresentation that embodied a promise of future action without

the present intention to carry out the promise; (2) the representation was false when made; (3) the

representation related to a material fact; (4) the false representation was made with the knowledge

of its falsity, without belief in its truth or recklessly without regard to its truth or falsity; (5) the

plaintiff reasonably relied on the misrepresented material fact; and (6) the plaintiff suffered damage

as a result of relying upon the misrepresentation. *Allied Sound, Inc. v. Neely*, 58 S.W.3d 119, 122

(Tenn. Ct. App. 2001); *Shahrdar v. Global Hous., Inc.*, 983 S.W.2d 230, 237 (Tenn. Ct. App. 1998);

*Metropolitan Gov't of Nashville & Davidson County McKinney*, 852 S.W.2d 233, 237 (Tenn. Ct.

App. 1992).

For claims of negligent misrepresentation, Tennessee has adopted Section 552 of the

Restatement (Second) of Torts. *Robinson v. Omer*, 952 S.W.2d 423, 427 (Tenn. 1997). To show

negligent misrepresentation, a plaintiff must establish the following:

> (1) the defendant [was] acting in the course of his business, profession, or employment, or in a transaction in which he [had] a pecuniary (as opposed to gratuitous) interest; and

> (2) the defendant [supplied] faulty information meant to guide others in their business transactions; and

> (3) the defendant [failed] to exercise reasonable care in obtaining or communicating the information; and

> (4) the plaintiff justifiably [relied] upon the information.

*Id.* (citation omitted).

The Appellants make two arguments in support of their assertion that management made misrepresentations to them. They first argue that Alstom had a plan in place in Spring 2003 for reducing its workforce: "First, they would see how many people they could get to retire based on the fear of losing pension benefits. Next, they would see how many people still needed to be cut and offer them voluntary separation benefits to get them to leave." Appellants' Brief at 17. Therefore, by telling the Appellants that the company had no plan to offer separation pay, the Appellants argue that management made material misrepresentations to them about a then-current fact.

The alleged plan is, however, based on speculation. There is no direct evidence of such a plan. While management looked at the *possibility* of offering separation pay as late as May 2003, Breckinridge testified that they decided against pursuing it, given the financial and other uncertainty surrounding the company. There is no evidence in the record that the final decisionmaker – Pajonas – knew of or approved any separation pay.[5] Although the company did offer separation pay to some employees in August and September, the circumstances which made such pay infeasible in the Spring – the union negotiations and financial trouble of ALSTOM – had been resolved by then –

---

[5]If a fiduciary of an ERISA plan gives "serious consideration" to making a material change to the plan, the fiduciary has a duty "not to make either intentional or negligent misrepresentations" about it to plan participants. *Drennan v. Gen. Motors Corp.*, 977 F.2d 246, 250-51 (6th Cir. 1992). Such consideration occurs only "when (1) a specific proposal (2) is being discussed for purposes of implementation (3) by senior management with the authority to implement the change." *McAuley v. Int'l Bus. Machs.*, 165 F.3d 1038, 1043 (6th Cir. 1999) (quoting *Fischer v. Philadelphia Elec. Co.*, 96 F.3d 1533, 1539 (3d Cir. 1996)). Because the district court concluded that there was no ERISA plan at issue here, *see supra* n.4, we are not directly faced with the question of whether Alstom management gave "serious consideration" to offering voluntary separation pay so as to trigger a fiduciary duty. Even so, we note that there is no evidence before us that any senior management with sufficient authority to implement voluntary separation pay was involved in the Spring 2003 discussions.

the company had signed the union contract and the French government had announced its bailout. As there is no evidentiary support for the existence in Spring 2003 of a firm plan to offer voluntary separation pay in the future after a certain number of employees had retired, Alstom management did not intentionally misrepresent the lack of such a plan when it informed the Appellants that separation pay would not be offered.

The Appellants alternatively argue "that Alstom management made a promise about future events, specifically that voluntary separation benefits would not be offered, and that management knew such statements were false at the time they were made or at least were reckless in making the statements, thus satisfying the promissory fraud element of intentional misrepresentation." Appellants' Brief at 20. Under Tennessee law, a claim of promissory fraud must involve "a promise of future action without the present intention to carry out the promise." *Stacks v. Saunders*, 812 S.W.2d 587, 592 (Tenn. Ct. App. 1990) (citation omitted).

Other than the decision in August to offer separation pay to several targeted employees, the Appellants have offered little to support their promissory fraud claim. Under Tennessee law, "[i]n order for the plaintiff to demonstrate the lack of present intent or that the statement was false when made, the plaintiff must do so by evidence *other than* subsequent failure to keep the promise . . . ." *Id.* at 593 (internal quotations omitted, emphasis added). Moreover, while proximity in time between a representation and a subsequent action that runs counter to the representation can, under certain circumstances, lend support to a claim of promissory fraud, *see Keith v. Murfreesboro Livestock Mkt.*, 780 S.W.2d 751, 754 (Tenn. Ct. App. 1989), here there is an intervening change of

circumstances that negates any inference based solely on temporal proximity – namely, the conclusion of labor negotiations and the financial bailout.

Underlying the Appellants' promissory fraud claim is the same factual allegation underlying their claim of misrepresentation based on an existing or past fact – i.e., that management planned to offer separation pay in the future when asked about it by the Appellants. For the reasons explained *supra*, that factual allegation is without sufficient support in the record.[6]

## III.

For the aforementioned reasons, we AFFIRM.

---

[6]Alstom also argues that, even if there was sufficient evidence of a misrepresentation by its management, the Appellants' claims still fail because: (a) they have not provided evidence that they reasonably relied on a misrepresentation; and (b) they cannot show they were damaged. We need not reach either question to affirm the district court, and therefore we decline to do so.