IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
January 23, 2014 Session

## BRADFORD E. HOLLIDAY, ET AL. v. HOMER C. PATTON, ET AL.

**Appeal from the Chancery Court for Shelby County**
**No. CH-11-1246-3     Kenny W. Armstrong, Chancellor**

---

**No. W2013-00545-COA-R3-CV - Filed March 31, 2014**

---

Bradford E. Holliday, Michael A. Holliday, and Clayton E. Holliday (collectively "Plaintiffs") sued Homer C. Patton and Jeffrey B. Presley (collectively "Defendants") for breach of contract and specific performance. Plaintiffs filed motions for summary judgment, which the Trial Court granted after finding and holding, *inter alia*, that the release provision contained in an amended agreement executed by Defendants "contains broad release language which the Court finds to be adequate to release claims of fraud asserted now by the Defendants in this action." Defendants appeal to this Court raising issues regarding whether the release was sufficient to waive claims of fraud and whether the Trial Court erred in finding that Defendants could not have reasonably relied upon representations made by Bradford E. Holliday. We find and hold that the release language contained in the amended agreement was insufficient to release claims of fraud and that there are genuine issues of material fact as to the issue of reasonable reliance, and we reverse the grant of summary judgment. We, however, affirm that portion of the Trial Court's order memorializing Defendants' voluntary dismissal with prejudice of their counterclaims for fraud against Michael A. Holliday and Clayton E. Holliday.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court
Reversed, in part; Affirmed, in part; Case Remanded**

D. MICHAEL SWINEY, J., delivered the opinion of the Court, in which DAVID R. FARMER and J. STEVEN STAFFORD, JJ. joined.

Randall J. Fishman and Richard S. Townley, Memphis, Tennessee, for the appellants, Homer C. Patton and Jeffrey B. Presley.

Taylor A. Cates, Memphis, Tennessee, for the appellee, Bradford E. Holliday.

Clinton J. Simpson, Memphis, Tennessee, for the appellees, Michael A. Holliday and Clayton E. Holliday.

## OPINION

## Background

Plaintiffs sued Defendants for breach of contract and specific performance with regard to the sale of a corporation that owned and operated retail clothing stores under the trade name of Holliday's Fashions. Defendants answered the complaint asserting, among other things, both a counterclaim for fraud and the affirmative defense of fraud in the inducement with regard to the amendment to the stock purchase agreement entered into by the parties.

In pertinent part, the amendment to the stock purchase agreement ("Amended Agreement"), which was entered into by the parties on March 17, 2010[1], provides:

This Amendment No. 1 to Stock Purchase Agreement ("Amendment") is made as of March 17, 2010 by and among Homer C. Patton ("Patton") and Jeffrey B. Presley ("Presley") (each individually, or its assigns and collectively "Purchaser"), and HOLLIDAY INVESTMENT CORPORATION, a Tennessee corporation ("Seller") and Bradford E. Holliday ("Brad" or "Owner"). Clayton E. Holliday ("Clay") and Michael A. Holliday ("Andrew") join in this Agreement as former stockholders who presently hold notes from Seller and will participate in the transaction contemplated hereby as more specifically set forth in this Agreement. Purchaser, Seller and Owner are each individually referred to herein as a "Party" and are collectively referred to herein as the "Parties.". [sic]

\* \* \*

7. Notwithstanding Seller and Owner's obligations to indemnify Purchaser set forth in the Agreement, including any limitation of such indemnifications, or Purchaser's right to offset against deferred Purchase Price set forth in Section 8(E)(2)(c) of the Agreement, and as additional consideration for Seller, Owner, Clay and Andrew to enter into this Amendment, Purchaser for itself, and for

---

[1]The Amended Agreement states that it was made as of March 17, 2010 and was executed on March 22, 2010.

its successors, assigns and representatives hereby releases and discharges Seller, Owner, Clay and Andrew and any past, present and/or future subsidiaries, affiliates, predecessors, successors, assigns, partners, members, directors, officers, employees, agents, representatives, principals, managers, attorneys and insurance carriers of the foregoing, from any and all claims, liabilities, and causes of action, whether accrued or unaccrued, discovered or undiscovered, asserted or unasserted, arising out of, relating to or resulting from (i) Seller and Owner's operation of the Company prior to the Closing, including but not limited to the results of the Audit, or (ii) Seller and Owner's representations and warranties set forth in the Agreement, including, without limitation, claims for breach of the Agreement.

Plaintiffs filed motions for summary judgment asserting, in part, that the release language contained in the Amended Agreement was sufficient to release Defendants' claims of fraud including fraud in the inducement relative to the Amended Agreement itself. After a hearing the Trial Court entered its order on February 6, 2013 granting Plaintiffs' motions for summary judgment and dismissing Defendants' counterclaim. In pertinent part, the February 6, 2013 order provides:

Plaintiffs/Counter-Defendants have moved for summary judgment both on their affirmative claims against Defendants/Counter-Plaintiffs and on the counterclaims for fraud asserted by Defendants/Counter-Plaintiffs.

This matter arises out of a stock sale of Holliday's General Services Corporation ("HGSC") to Defendants from one of the Plaintiffs, Brad Holliday. The other Plaintiffs are the brothers of Brad Holliday, who had previously sold their interest in the corporation to their brother, Brad Holliday. The corporation had outstanding notes to the brothers at the time of this sale. As part of the sale, the Defendants undertook to personally guarantee the notes to Brad Holliday's brothers, Michael and Clay. After the sale of the business, the Defendants discovered, among other things, that the inventory was grossly overstated, the payables were grossly understated, and further, that the profit of the corporation had been misstated for the year prior to sale. While the Court finds the information provided to the purchasers prior to the amendment to be fraudulent and/or misrepresented by Brad Holliday, the parties subsequently elected to enter into an amended agreement on March 22, 2010, thereby reducing the total purchase price for the stock of the company by approximately $1.3 Million. The release provision of the amended agreement contains broad release language, although it does not specifically release fraud claims.

-3-

As part of the transaction, Defendants agreed to execute promissory notes to the Plaintiffs. Subsequent to the discovery of the false information provided to the Defendants by Brad Holliday, and the execution of the amended agreement, Defendants sent corrected financial information to all the factors of the business, at which time the factors shut off credit to the business. The Defendants defaulted on said promissory notes on May 5, 2011.

* * *

Defendants have asserted as a defense to Plaintiffs' claims that they were defrauded into entering the March 22, 2010 amended stock purchase agreement. Defendants have asserted a counterclaim against Plaintiffs on the same basis. However, Defendants agreed to dismiss with prejudice their counter claims for fraud against Andrew Holliday and Clay Holliday in open Court on December 17, 2012. Defendants allege that Brad Holliday withheld additional information from them, more specifically that prior P&L statements from prior years contained false and misleading information concerning the profit of the company upon which the Defendants relied to determine their price. Defendants also allege that Mr. Brad Holliday served as the agent for Plaintiffs, Andrew Holliday and Clay Holliday, in the alleged misleading conduct. The Court finds that there is no evidence that either Andrew Holliday or Clay Holliday participated in the sale transaction at issue in this matter and that there is no evidence that either Andrew Holliday or Clay Holliday made any representation, fraudulently or negligently, to Defendants regarding the sale transaction at issue. Furthermore, the Court made no determination regarding Defendants' allegation that Brad Holliday served as the agent for Andrew Holliday and/or Clay Holliday. The Court finds that in light of the clearly erroneous information the Defendants uncovered after the sale, the Defendants cannot in good faith argue they justifiably relied on representations made by the seller to induce them to enter into the amended stock purchase agreement, and further, that the release provision of the amended agreement, while not specifically mentioning fraud, contains broad release language which the Court finds to be adequate to release claims of fraud asserted now by the Defendants in this action.

Defendants appeal to this Court.

-4-

**Discussion**

Although not stated exactly as such, Defendants raise two issues on appeal: 1) whether the Trial Court erred in finding that the release contained in the Amended Agreement was sufficient to waive claims of fraud including fraud in the inducement relative to the Amended Agreement itself; and, 2) whether the Trial Court erred in finding that Defendants could not have reasonably relied upon representations made by Bradford E. Holliday.

With regard to summary judgments, this Court explained in *Estate of Boote v. Roberts*:

> The trial court's resolution of a motion for summary judgment is a conclusion of law, which we review *de novo* on appeal, according no deference to the trial court's decision. *Martin v. Norfolk S. Ry. Co.*, 271 S.W.3d 76, 84 (Tenn. 2008). Summary judgment is appropriate only when the moving party can demonstrate that there is no genuine issue of material fact, and that it is entitled to judgment as a matter of law. Tenn. R. Civ. P. 56.04; *see Hannan v. Alltel Publ'g Co.*, 270 S.W.3d 1, 5 (Tenn. 2008); *Byrd v. Hall*, 847 S.W.2d 208, 214 (Tenn. 1993).
>
> This action was filed [after July 1, 2011]. Therefore, the trial court was required to apply the summary-judgment standard set forth in Tennessee Code Annotated § 20-16-101.[2] That statute provides:
>
>> In motions for summary judgment in any civil action in Tennessee, the moving party who does not bear the burden of proof at trial shall prevail on its motion for summary judgment if it:
>>
>>> (1) Submits affirmative evidence that negates an essential element of the nonmoving party's claim; or
>>> (2) Demonstrates to the court that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's claim.

---

[2]Section 20-16-101 is applicable to all cases filed on or after July 1, 2011.

Tenn. Code Ann. § 20-16-101 (Supp. 2012).[3]

*Estate of Boote v. Roberts*, No. M2012-00865- COA-R3-CV, 2013 Tenn. App. LEXIS 222, at **24-25 (Tenn. Ct. App. March 28, 2013), *no appl. perm. appeal filed* (footnotes in original but renumbered).

We first consider whether the Trial Court erred in finding that the release contained in the Amended Agreement was sufficient to waive claims of fraud including fraudulent inducement. In *Shelby Electric Co., Inc. v. Forbes*, this Court addressing a matter of first impression held that the defenses of fraud or fraudulent inducement were not waived in the absence of a specific waiver of these defenses. *Shelby Electric Co., Inc. v. Forbes*, 205 S.W.3d 448 (Tenn. Ct. App. 2005). The waiver in *Shelby Electric Co., Inc.* was "a basic 'catch-all' waiver provision that appear[ed] to be boilerplate language in guaranties used routinely by the Bank," which contained "no mention of a waiver of the defenses of fraud or fraudulent inducement." *Id*. at 455 (footnote omitted). In reaching its decision, the *Shelby Electric Co., Inc.* Court noted:

It is well settled in Tennessee that the courts of our State will not be utilized to enforce a contract which is the product of fraud; indeed, fraud vitiates all that it touches. The Tennessee Supreme Court has underscored the effect of fraud on transactions:

Fraud vitiates and avoids all human transactions, from the solemn judgment of a court to a private contract. It is as odious and as fatal in a court of law as in a court of equity. It is a thing indefinable by any fixed and arbitrary definition. In its multiform phases and subtle shapes, it baffles definition. It is said, indeed, that it is part of the equity doctrine of fraud not to define it, lest the craft of men should find ways of committing fraud which might evade such a definition. In its most general sense, it embraces all acts, omissions, or concealments which involve a breach of legal and equitable duty, trust or confidence justly reposed, and are injurious to another, or by which an

---

[3]Section 20-16-101 was enacted to abrogate the summary-judgment standard set forth in *Hannan*, which permitted a trial court to grant summary judgment only if the moving party could either (1) affirmatively negate an essential element of the nonmoving party's claim or (2) show that the nonmoving party cannot prove an essential element of the claim at trial. *Hannan*, 270 S.W.3d at 5. The statute is intended "to return the summary judgment burden-shifting analytical framework to that which existed prior to *Hannan*, reinstating the 'put up or shut up' standard." *Coleman v. S. Tenn. Oil Inc.*, No. M2011-01329-COA-R3-CV, 2012 Tenn. App. LEXIS 453, 2012 WL 2628617, at *5 n.3 (Tenn. Ct. App. July 5, 2012).

undue and unconscientious advantage is taken of another. A judicial proceeding in rem, while generally binding upon all persons, is no more free from the fatal taint of fraud than a proceeding in personam, or an individual contract. When once shown to exist, it poisons alike the contract of the citizen, the treaty of the diplomat, and the solemn judgment of the court.

*Id*. at 455 (citations omitted).

In the case now before us, we note that Defendants raise both the affirmative defense of fraud and a counterclaim for fraud. The release contained in the Amended Agreement purports to waive "any and all claims, liabilities, and causes of action," but does not address defenses. Thus, the defense of fraud was not specifically waived in the Amended Agreement.

Furthermore, the language in the Amended Agreement waiving "any and all claims, liabilities, and causes of action," does not specifically address claims of fraud. As such, pursuant to the analysis detailed in *Shelby Electric Co., Inc.*, the language in the Amended Agreement is insufficient to waive claims of fraud.

We next consider whether the Trial Court erred in finding that Defendants could not have reasonably relied upon representations made by Bradford E. Holliday. Reasonable reliance is a required element of both a claim for common law fraud, *e.g., Black v. Black*, 166 S.W.3d 699, 705 (Tenn. 2005), and one for fraudulent inducement, *e.g., Baugh v. Novak*, 340 S.W.3d 372, 388 (Tenn. 2011). With regard to reasonable reliance our Supreme Court has explained:

Whether a person's reliance on a representation is reasonable generally is a question of fact requiring the consideration of a number of factors. *E.g., City State Bank v. Dean Witter Reynolds, Inc.*, 948 S.W.2d 729, 737 (Tenn. Ct. App. 1996). The factors include the plaintiff's sophistication and expertise in the subject matter of the representation, the type of relationship – fiduciary or otherwise – between the parties, the availability of relevant information about the representation, any concealment of the misrepresentation, any opportunity to discover the misrepresentation, which party initiated the transaction, and the specificity of the misrepresentation. *See, e.g., id.; accord Allied Sound, Inc. v. Neely*, 58 S.W.3d 119, 122-23 (Tenn. Ct. App. 2001).

*Davis v. McGuigan*, 325 S.W.3d 149, 158 (Tenn. 2010).

The Trial Court found in the case now before us that "in light of the clearly erroneous information the Defendants uncovered after the sale, the Defendants cannot in good faith argue they justifiably relied on representations made by the seller to induce them to enter into the amended stock purchase agreement . . . ." Basically, the Trial Court found that because Defendants had caught Bradford E. Holliday making misrepresentations in the past that Defendants' reliance upon later representations made by Bradford E. Holliday in relation to the Amended Agreement could not be reasonable. We disagree with this analysis. We will not hold that as a matter of law the fact that someone may have made fraudulent misrepresentations, or, to state it more bluntly, told lies in the past, precludes another party from ever reasonably relying upon representations by the lying party in the future. To hold as the Trial Court did would give an individual guilty of fraud a free pass to attempt even more fraud to settle or resolve his initial fraudulent conduct while knowing that his later fraudulent conduct could not be used against him in a civil court action.

Consideration of the factors to determine if Defendants' reliance upon statements or representations made by Bradford E. Holliday was reasonable involves highly fact dependent determinations not appropriate for summary judgment. Because the record on appeal reveals that there are genuine issues of material fact with regard to the issue of whether Defendants' reliance upon representations made by Bradford E. Holliday was reasonable, Plaintiffs were not entitled to summary judgment on this issue. We, therefore, reverse the grant of summary judgment.

Although defendants Michael A. Holliday, and Clayton E. Holliday do not raise a separate issue on appeal with regard to whether Bradford E. Holliday acted as their agent, they do present an argument on this issue in their brief on appeal. The Trial Court, however, specifically made no determination with regard to the agency issue. As such, the agency issue is not properly before this Court, and we will not address it for the first time on appeal.

In conclusion, we note that in its February 6, 2013 order the Trial Court memorialized the fact that "Defendants agreed to dismiss with prejudice their counter claims for fraud against Andrew Holliday and Clay Holliday in open Court on December 17, 2012." Defendants acknowledge in their reply brief on appeal that they "agreed in open court to dismiss the counterclaim against the brothers, Clay and Andrew, . . . but [Defendants] maintain the fraud of Brad Holliday as an affirmative defense against the claims of the brother[s], Clay and Andrew." Given that Defendants voluntarily dismissed with prejudice their counterclaim against Michael A. Holliday, and Clayton E. Holliday, and the fact that no issue was raised with regard to this subject on appeal, we affirm that portion of the Trial Court's order memorializing Defendants' dismissal with prejudice of their counterclaims for fraud against Michael A. Holliday, and Clayton E. Holliday.

## **Conclusion**

The judgment of the Trial Court is reversed as to the grant of summary judgment and affirmed as to the dismissal with prejudice of Defendants' counterclaims for fraud against Michael A. Holliday, and Clayton E. Holliday. This cause is remanded to the Trial Court for further proceedings consistent with this Opinion and for collection of the costs below. The costs on appeal are assessed against the appellants, Homer C. Patton and Jeffrey B. Presley, and their surety.

_____
D. MICHAEL SWINEY, JUDGE